(No. 43228.—

THE PEOPLE *ex rel.* Carolyn K. Strand, Appellee, *vs.* PAUL H. HARNETIAUX *et al.,* Appellants.

*Opinion filed October 7, 1970.*

MEYER & MEYER, of Greenville, for appellants.

BURNSIDE AND DEES, of Vandalia, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case involves the custody of a minor child, Mark Allen Harnetiaux, who was born January 1, 1961. His mother, Carolyn K. Strand, formerly Carolyn K. Harnetiaux, is the plaintiff in this *habeas corpus* action. His paternal grandparents, Paul H. and Charleen Harnetiaux, are the defendants.

Mark and his parents lived in California on April 12, 1966, when his father, Paul G. Harnetiaux, filed suit for divorce in the superior court of Los Angeles County. On January 16, 1967, the court entered an interlocutory judgment of divorce whereby each party was granted a divorce from the other. When this interlocutory judgment was en-

tered, the father had custody of the child. By the judgment custody of the child was awarded to the mother subject to visitation rights of the father. On April 12, 1967, a final judgment of divorce was entered which continued the custody of the child with the mother. Thereafter, on April 18, 1967, on motion of the father and after a contested hearing, the court modified its custody order and granted custody of the child to the father, subject to visitation rights of the mother. The court also authorized the father, Paul G. Harnetiaux, to bring the child to the residence of the boy's grandparents in Illinois, but allowed the mother to have the child with her each summer during the month of July. Thereafter Paul G. Harnetiaux and Mark Allen Harnetiaux came to Bond County, Illinois, to live with the defendants, the boy's paternal grandparents.

On September 9, 1967, Paul G. Harnetiaux was killed in an automobile accident in Illinois. Thereafter the defendants refused to allow the plaintiff, who came to Illinois, to see the child. In September, 1967, the defendants filed a guardianship proceeding in the circuit court of Bond County, Illinois, and without notice to the plaintiff they were appointed guardians of the person and estate of the child. On November 27, 1967, the mother applied to the court which granted the original divorce for a modification of the divorce decree to grant the custody of the child to her. The defendants were notified of the application by registered mail, but no process was served upon them and neither they nor the child were before the California court. On January 24, 1968, that court modified the divorce decree and granted custody of the child to the plaintiff.

Thereafter, on March 21, 1968, the plaintiff brought this *habeas corpus* action in the circuit court of Bond County seeking custody of the child on the ground that the California order is entitled to full faith and credit or, alternatively, on the ground that she is competent to transact her own business and is a fit person, and therefore is en-

titled to custody as the child's mother. (Ill. Rev. Stat. 1969, ch. 3, par. 132.) After the defendants answered, the plaintiff moved for summary judgment on the ground that the most recent California order, which granted her custody of the child, was entitled to full faith and credit. The circuit court granted the motion. The defendants' appeal to the appellate court was properly transferred to this court. 43 Ill.2d R. 302.

In this court the arguments of the parties have centered upon whether, under California law, the death of the father terminated the jurisdiction of the divorce court to modify its custody decree. Those arguments have focused upon the interpretation to be given to observations made in two California opinions which were not concerned with this immediate issue. (*In re DeLeon* (1924), 70 Cal. App. 1, 232 P. 738; *Younger* v. *Younger* (1895), 106 Cal. 377, 39 P. 779.) The answer to be derived from the materials put before us is not clear. But we do not have to decide that question, for we think that whether or not the California court retained jurisdiction to modify its custody decree, its judgment doing so need not be given full faith and credit by the courts of Illinois.

The extent to which the full-faith-and-credit clause of the Federal constitution embraces child custody decrees has never been conclusively delineated; indeed it is still an open question whether the clause is applicable to child custody decrees at all. (*New York ex rel. Halvey* v. *Halvey* (1947), 330 U.S. 610, 91 L. Ed. 1133, 67 S. Ct. 903; *Kovacs* v. *Brewer* (1958), 356 U.S. 604, 2 L. Ed.2d 1008, 78 S. Ct. 963.) The child custody decree fits uneasily, if at all, into the objectives of the full-faith-and-credit clause. That clause, adopted when legislative rather than judicial divorces were the practice, was intended to insure that the federal character of the nation should not be exploited by disappointed litigants who would relitigate in one State issues previously decided by the courts of another. This desire

for finality, however, is often in conflict with the best interests of the child which has always been the paramount concern of the child custody decree.

The Supreme Court has expressly left open the question of whether or not the full-faith-and-credit clause applies to custody decrees. Recognizing that most of the States allow modification of a custody decree if it is in the best interests of the child, the Court has held only that "[w]hatever effect the Full Faith and Credit Clause may have with respect to custody decrees, it is clear * * * 'that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it is rendered.' " *Kovacs* v. *Brewer* (1958), 356 U.S. 604, 607, 2 L. Ed. 2d 1008, 1012, 78 S. Ct. 963. See also *New York ex rel. Halvey* (1947), 330 U.S. 610, 91 L. Ed. 1133, 67 S. Ct. 903.

New York has expressly adopted the view that the welfare of the child must always take precedence over those policies of national unity expressed in the full-faith-and-credit clause and, therefore, that full faith and credit need never be given to a sister State's custody decree. (*Bachman* v. *Mejias* (1956), 1 N.Y.2d 575, 136 N.E.2d 866), and several other States also appear to have done so. (See A. Ehrenzweig, Conflict of Laws (1962) 290-91; R. Leflar, American Conflicts Law (1968) 588.) Two independent studies of large numbers of custody cases suggest that those courts which speak in terms of full faith and credit have actually exercised their discretion in the best interests of the child by finding either that the circumstances have changed since the issuance of the previous decree, and therefore that the sister State would have permitted modification, or by finding that the foreign court lacked jurisdiction to issue the previous decree. (Ehrenzweig, Interstate Recognition of Custody Decrees (1953), 51 Mich. L. Rev. 345; Stansbury, Custody and Maintenance Law Across State Lines (1944), 10 Law and Contemp. Prob. 819. See also Stumberg, The

Status of Children in the Conflict of Laws (1940), 8 U. Chi. L. Rev. 42, 57; A. Ehrenzweig, Conflict of Laws (1962) 287-300.) This view is reinforced by the Restatement (Second) of Conflict of Laws which also concludes that the courts have been reluctant to grant full faith and credit to foreign custody decrees, even in the absence of changed conditions, if it would not be in the best interests of the child to do so. Restatement (Second) of Conflict of Laws, § 79, comment c (Proposed Official Draft, Part I, 1967). See also R. Leflar, American Conflicts Law (1968) 588-590.

In this case the child was taken from the plaintiff by order of the California court and has since resided in the home of the defendants, except for the month of July, 1967. Neither the child nor the defendants, however, were heard at the California hearing to grant custody to the plaintiff, and we think any determination which purports to be guided by the best interests of the child is under a serious handicap when the child and the people with whom he has been living are not present. Whether the judge who presided at the most recent California hearing was aware of the circumstances that had prompted another judge to take the child from the plaintiff does not appear from the record before us. The undesirability of relying upon "formal proof" of a court order in a case of this kind has been pointed out. (Paulsen and Best, Appointment of a Guardian in the Conflict of Laws (1960), 45 Iowa L.R. 212, 226.) Other courts when confronted with a foreign custody decree which has been modified at the request, and in favor, of a parent who is still a domiciliary of the foreign State, when the other parent and child are now domiciled in the forum State, have generally refused to grant full faith and credit to the modified decree on the ground that the foreign State no longer had jurisdiction over the other parent and child. See *e.g., Cunningham* v. *Cunningham* (1957), 166 Ohio St. 203, 141 N.E.2d 172; *Application of Enke* (1955), 129 Mont. 353, 287 P.2d 19;

*Rodney* v. *Adams* (Ky. Ct. App. 1954), 268 S.W.2d 940; A. Ehrenzweig, Conflict of Laws (1962), 289; R. Leflar, American Conflicts Law (1968) 588.

In this case there is at best grave doubt as to whether California could exercise jurisdiction over the child, and an even more serious question as to whether the California court had acquired jurisdiction over the defendants. On the other hand, all of the parties are properly before the Illinois court in the present action, and we are of the opinion that the trial court should, as the plaintiff requested, conduct a hearing to determine who should have custody of the child. In ordering a hearing we are not passing on the merits; the trial court will determine who should have custody after considering all relevant factors.

The judgment of the circuit court of Bond County is reversed, and the cause is remanded to that court for further proceedings.

*Reversed and remanded.*