THE PEOPLE *ex rel.* GREGORY ELMORE, JR., by Anita Archibald, his Mother and Next Friend, Petitioner-Appellant, *v.* GREGORY ELMORE, SR., *et al.*, Respondents-Appellees.

First District (3rd Division)   No. 76-80

Opinion filed March 2, 1977.

Patrick T. Murphy and Joan Levin, both of Chicago, for appellant.

Downs, O'Bryan & Burns, of Chicago (Thomas R. O'Bryan, of counsel), for appellees.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

This is a contest between the mother (petitioner) and father (respondent) over custody of a child born on November 7, 1973, out of wedlock. The mother, assuming that she and the father would be married, recorded the birth certificate with the father's name. Both he and the mother acknowledge his paternity. When the child was born, the mother, a resident of Chicago, but a student at a State university outside the Chicago area, was unable to care for the baby while pursuing her education. There was evidence that the father and his mother (also a respondent) urged the petitioner to leave the baby with them in Chicago while she continued her college studies. In any event, the respondents, without objection from the petitioner, cared for the baby in their home from a few days after his birth until he was approximately a year old. During that interval the mother visited the baby frequently and contributed approximately $100 to his support.

In the fall of 1974, when the child was approximately a year old, the mother, while visiting her son, took him to her sister's home and decided to keep him permanently. The respondents pursued her, and after some words and threats regained possession of the child. The baby has continued to reside with the respondents. The mother filed a petition for a writ of habeas corpus in June 1975, seeking to adjudicate the propriety of the baby's custody by the respondents. After several hearings at which evidence was received, the circuit court judge stated that he was unable to resolve which parent was better fitted to have the care and custody of the child. The judge then entered an order denying the petition for a writ of habeas corpus without making a determination as to what was in the best interest of the child. The order contained findings that the mother and father each had demonstrated a legal interest in the child and that neither of them was unfit, and it reserved visitation rights for the mother 1 day a week away from the father's home. Apparently, the trial judge's reasoning was that because the father had a legal right to the child which he had not forfeited by any improper conduct, the court lacked authority in a habeas corpus proceeding to change the custody of the child.

■■ The petitioner appeals from the denial of her petition. Her first contention is that as a matter of law, if the mother of a child born out of wedlock is not judicially determined to be unfit, she has a right to custody superior to the natural father. The same argument was rejected in *People ex rel. Irby v. Dubois* (1976), 41 Ill. App. 3d 609, 354 N.E.2d 562; the court

in that case concluded that based on case law as well as article I, section 18 of the Illinois Constitution, which provides that equal protection of the law shall not be abridged or denied because of sex, motherhood does not confer a superior right to custody. The court said: "In Illinois no presumption exists favoring custody in either parent." (*People ex rel. Irby v. Dubois* (1976), 41 Ill. App. 3d 609, 612.) Thus, although the petitioner has no superior right because she is the mother, neither does the father's custody of the child for a long time prior to the hearing on the writ give him a preemptive right to custody. *Irby* also was concerned with young children born out of wedlock. We agree with *Irby*, and conclude that because neither was unfit, the mother and father had equal rights to custody of their child.

■■ The petitioner also argues that she was deprived of equal protection of the law because no understandable and appropriate forum existed for adjudicating whether she or the father should have custody of their child. If the parties were married and a divorce action was pending, the circuit court would have had authority under section 13 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 14) to determine the custody and care of minor children of the parties. The authority granted by that Act even has been stretched to permit a determination of the custody and care of children conceived by and born to parents after they have been divorced. (See *Vanderlaan v. Vanderlaan* (1972), 9 Ill. App. 3d 260, 292 N.E.2d 145.) Because the parties to this proceeding never were married, the Divorce Act does not provide a vehicle for determining custody of their child. Neither do the Adoption Act (Ill. Rev. Stat. 1975, ch. 4) where plaintiff was not eligible to seek adoption of her natural child, nor the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*) when plaintiff was not claiming her child was neglected, dependent, delinquent or in need of supervision. See Ill. Rev. Stat. 1975, ch. 37, par. 701—4.

■■ ■ In the absence of legislation establishing a procedure for resolving a dispute over custody of a child between parents who never have been married, society requires that the law shape an appropriate forum. The alternative is self-help, a solution not countenanced by this court because it serves the best interests of neither the child nor the parents. A court adjudicating a dispute between parents over custody of a legitimate child would be guided by what is in the best interest of the child and would best promote its welfare. (*Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581.) We perceive no justification for proceeding differently with a child born out of wedlock.

■■ There are several reported Illinois cases in which reviewing courts have found a habeas corpus proceeding suitable for determining what is in a child's best interest and awarding custody on that basis. (*People ex rel. Strand v. Harnetiaux* (1970), 46 Ill. 2d 424, 263 N.E.2d 30;

*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417; *Giacopelli v. The Crittenton Home* (1959), 16 Ill. 2d 556, 565, 158 N.E.2d 613; *People ex rel. Irby v. Dubois* (1976), 41 Ill. App. 3d 609, 354 N.E.2d 562.) Thus, the petitioner's application for a writ of habeas corpus set in motion an appropriate judicial process for determining which parent should be awarded custody based on what would best promote the child's welfare. The shortcoming of the circuit court is that it failed to determine what was in the best interest of the child and to award custody accordingly. Although this often may be a difficult decision, it is one frequently reached by judges sitting in the divorce division of the circuit court, and one which the circuit court judge was required to make in this case.

The circuit court's order denying a writ of habeas corpus is reversed and remanded with directions to the circuit court to receive whatever additional evidence the parties may desire to offer, and to award custody based on the best interest of the child in the same manner it would in the case of married parents. The circuit court should also consider such orders for support of the child as may be appropriate, and visitation rights for the parent to whom custody is not awarded.

Reversed and remanded with directions.

JIGANTI and McGILLICUDDY, JJ., concur.