BENNY R. HINTON, Petitioner-Appellee, *v.* DOLORES HINTON SEARLES, Respondent-Appellant.

Fifth District   No. 76-476

Opinion filed September 19, 1977.—Rehearing denied October 19, 1977.

434

Harry J. Sterling, of Fairview Heights, for appellant.

Joe T. Buerkle, of Buerkle, Buerkle & Lowes, of Jackson, Missouri, and John L. McMullin, III, of Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney and Brown, of St. Louis, Missouri, for appellee.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

Dolores Hinton Searles (hereinafter respondent) seeks review of an adverse order of the circuit court of St. Clair County confirming custody of respondent's two children in Benny R. Hinton (hereinafter petitioner), respondent's former husband. The issues presented for review are whether the trial court erred in holding that a prior Missouri custody decree was entered and founded upon proper jurisdiction, and whether the trial court properly granted custody of the two minor children to petitioner.

Petitioner and respondent were divorced in Bollinger County, Missouri on April 19, 1972, with respondent being granted custody of the parties' two minor adopted children. On November 22, 1974, petitioner was granted specific visitation rights but thereafter was denied those rights on two occasions by respondent on the grounds of alleged abuse of the children by petitioner. A contempt proceeding was had against

respondent on March 3, 1975, in Bollinger County for failure to abide by the terms of the order of November 22, 1974. In that proceeding respondent was found in contempt of court and was sentenced to 45 days in jail, the sentence being suspended until March 15, 1975. On March 14, 1975, respondent moved to Alabama with the two children.

Harold Horsely, Jr., respondent's attorney of record at the contempt proceeding, was served with a notice of petitioner's petition to modify the custody decree. The petition was heard on June 16, 1975, in the absence of both respondent and the children. The Missouri court changed the custody to petitioner and relieved him of any further child support payments. The court denied respondent any visitation rights until such time as she applied to the court for a modification.

On December 23, 1975, respondent filed a petition in the Circuit Court of Escambia County, Alabama, seeking to retain custody of the children. Petitioner filed a cross-petition seeking full faith and credit of the June 16, 1975, modification in the Missouri court. The day before the hearing on the matter, respondent moved to Belleville, Illinois, and an order was entered by the court dismissing the cause. However, the Alabama court granted petitioner's request for full faith and credit of the Missouri modification, thus reaffirming custody in petitioner.

On October 5, 1976, petitioner filed in the Circuit Court of St. Clair County his petition for a writ of habeas corpus. Respondent replied, setting up four affirmative defenses. The trial court heard argument on all matters, then held that there had not been shown sufficient circumstances to justify a change in custody, and therefore the custody remained in the petitioner. The children were delivered to petitioner and respondent appealed.

In our opinion the trial court erred in confirming custody in petitioner.

Initially, we must ascertain what effect the orders of the Missouri and Alabama courts have upon this jurisdiction. In its lengthy recitation of findings and conclusions at the close of the case, the trial court specifically followed the case of *People ex rel. Bukovich v. Bukovich*, 39 Ill. 2d 76, 233 N.E.2d 382, in reaching its conclusion, with the trial judge stating:

"Now, as I have said, the primary consideration is to show a change—or the primary burden is to show a change of circumstances and what changes of circumstances has [sic] been brought forth in this case which would require this Court to take custody from the father and give it to the mother, Mrs. Searles.

I think after all was said and done, that is really the heart of this particular case. As relates to Mr. Hinton, there was no evidence that there had been any changes in the circumstances either from July 76 or from June 75, and in reading this case, the Court is of the opinion that the parties seeking to, and I believe this is the law of

the State of Illinois, that the party seeking to change custody has the burden of proof to show a substantial change in custody [sic]. * * * Mrs. Searles would have the burden of going forward and convincing this Court that there has been a substantial change in circumstances that would warrant the change of custody as set forth in the decree of the Missouri Court dated June 16, 1975.
* * *

Now, again, under the dictates of the *Bukovich* case, if this Court felt satisfied that that was a sufficient change of circumstances affecting the best interest [sic] of the children, what this court could have done was to grant the custody of these children to the mother. This Court had the power to do that, it had more than that, it had the duty to do that. This gets down to the very narrow factual decision by this Court as to whether that constitutes sufficient change of circumstances. This Court is of the opinion that it was not such a substantial change of circumstances to justify a change of custody in this proceeding."

At other times in its findings the trial court specifically stated that it had gone beyond the Missouri and Alabama decrees in reaching its conclusion and that it had not strictly adhered to the dictates of *Bukovich*. However, as the above quotation amply illustrates, it is apparent from the record that the trial court considered those factors subsequent to the earlier decrees and further treated the findings of the Missouri court in the June 16, 1975, order as binding and conclusive of issues to that date. But the trial court did hear evidence on the circumstances leading up to the contempt hearing in Missouri on March 3, 1975, and also allowed the respondent to fully develop the defenses she raised in her pleadings. In particular, the question of the harsh treatment of the children by their father was raised. This subject was developed by both the petitioner and respondent.

■■■ We believe the facts of this case are controlled by the latest pronouncement by our supreme court on this subject in *People ex rel. Strand v. Harnetiaux*, 46 Ill. 2d 424, 263 N.E.2d 30. In that case the court discussed the relevance of the full faith and credit doctrine as it relates to child custody matters. After a divorce in California the father, who was granted custody of the only child of the marriage, gained permission of the California court to reside in Illinois. The father was then killed in an accident and the paternal grandparents living in Illinois were appointed guardians of the child. The mother then obtained a court decree in California modifying the custody in her. The paternal grandparents were not served with process, but were notified of the suit by letter. An Illinois trial court granted the mother's request to give full faith and credit to the California order. The supreme court reversed, ordering a hearing to

determine the best interests of the child. The court mentioned that the California court had neither the defendants nor the child before it when it made its ruling, and that such a situation created a "serious handicap" to the determination of the best interest of the child. (*People ex rel. Strand v. Harnetiaux*, 46 Ill. 2d 424, 429.) In addition, the court cited the Restatement of Conflicts for the proposition that courts of review are reluctant to grant full faith and credit to custody decrees even in the absence of changed circumstances if the decree is not in the best interests of the child. 46 Ill. 2d 424, 429.

The inescapable logic of our supreme court in *Strand v. Harnetiaux* is consistent with the decisions of other jurisdictions. For example, in *Application of Caldwell*, 525 P.2d 641 (Okla. 1974), the court made the following remarks:

"Where a decree determining custody is entered upon default, it would be unrealistic to assume that the court which has no opportunity to observe the two contending parents upon the witness stand, or to examine the evidence concerning their fitness and the welfare of the child can serve the best interest of the child as well as it could in a court where the matter has been contested. It must accept the allegations of the petitioner or, at best, his uncross-examined testimony. In such a case, the rule that a change of circumstances must be shown before a change of custody can be ordered does not have its usual efficacy. Where, the court in the prior hearing heard the evidence and observed the parties, it can be assumed that all the circumstances existing at the time were made known to the court and that sound discretion was utilized. However, where the prior decree was entered by default, no such assumption can be indulged." 525 P.2d 641, 643.

■■ This court views with suspicion any major modification of a custody decree rendered while the children and other parent are not present in the jurisdiction. Where the modification of the decree in the Missouri court was obtained without the presence of respondent or the children, there could be no informed decision of what action was in the best interests of the children. We cannot and should not engage ourselves in simple legal fictions by disregarding what we know to be true—the Missouri court rendered its decision going to the heart of this dispute without the presence and participation of crucial parties and witnesses.

■■ ■ Nor should the proper custody determination be made to depend on whether the mother was in fact a fugitive from justice. By this we do not infer that the June 16, 1975, order of the Missouri court was designed to punish the respondent's flight to avoid imprisonment for contempt. However, that order was a complete reversal of the original decree and thus must have been based on a substantial change of

circumstances. If respondent's absence in any way played a role in the court's decision, that decision was erroneous, for the proper award of custody should never be made to depend on factors irrelevant to the best interests of the child.

■■ The record clearly indicates that respondent's attorney in the contempt proceeding received some type of information that petitioner's attorney had filed a motion to modify the divorce decree. Respondent's attorney then notified counsel that he no longer represented respondent and in fact did not know her present address. In spite of this, petitioner's attorney proceeded to a hearing on June 16, 1975, whereby the court ordered custody of the children to be changed from the respondent to the petitioner and the support payments to be terminated. In Missouri, the burden of proving that an attorney-client relationship exists is on the party alleging that relationship. *(Burgess v. Burgess*, 239 Mo. App. 390, 190 S.W.2d 282 (1945); *Fernbaugh v. Clark*, 236 Mo. App. 1200, 163 S.W.2d 999 (1942).) The record in this case which includes certain orders of the Missouri trial court does not indicate any proof whatsoever of this relationship being made by petitioner's attorney or even being included in the court's order.

■■■ Under Missouri law a motion to modify a divorce decree is an independent proceeding, and the motion is treated as a petition in an original action. Summons in the usual form need not be issued and served, but reasonable and proper notice of the motion to modify and the time it is to be called for hearing must be given the party adversely affected. *Greene v. Greene*, 368 S.W.2d 426 (Mo. 1963); *In re Lipschitz*, 466 S.W.2d 183 (Mo. App. 1971).

■■ Under these circumstances we find that the modification of the custody decree by the Missouri trial court is not entitled to full faith and credit in Illinois because the Missouri court did not have jurisdiction over all necessary parties.

The overriding consideration of the trial court is the welfare of the children. Regardless of the nature of the proceedings, the rights of the parents must be subservient to the well-being and interest of the children. In addition, a determination of these issues must be made only after a full and plenary hearing and inquiry. As stated in *Boone v. Boone*, 150 F.2d 153, 154-55 (D. C. Cir. 1945):

> "If the pleadings and evidence revealed a situation which required action, it was the duty of the court to act in behalf of these children and for their protection, regardless of anything previously said or done by any court. Our function under such circumstances is, only, to review the question whether the trial court properly exercised its discretion with a view to the present welfare of the children."

The court in *Boone* further stated at page 155:

"Although the present proceeding is in the name of the children, appellant's argument is pitched, largely, upon the adversary rights of the parents; much weight is given to judgments entered, orders issued and disobeyed. We may as well recognize that such considerations are very unreal in the case of parents and children. In doing so we do not for a moment sanction kidnapping or encourage contempt of court. The important consideration is that when a court is confronted with a question of custody, it is required to act as parens patriae. Under such circumstances, children cannot be used as pawns in a game of legal chess to work out conceptions of status and property rights."

■■ In the present case the trial court gave full faith and credit to the Missouri court's modification of the decree on June 16, 1975, and then conducted a full-scale hearing concerning the best interests of the children. The trial court proceeded on the announced theory that unless "circumstances have changed" since the modification decree, the court must afford it full faith and credit. The court entertained evidence of child abuse by the father previous to the Missouri modification, but stated that it was prevented from considering the evidence because it occurred prior to the modification. This was error, for the court had the duty to consider all facts and circumstances which related to the well-being of the children. The trial court in its consideration of the best interests of the children can make a just determination without being hindered by a previous order in another court. We find that *Strand v. Harnetiaux* is authority for the trial court making an "in depth" inquiry into the best interests of the children involved in this custody dispute, and for the court being free from a mandatory application of the full faith and credit doctrine.

The court interviewed the children off the record to ascertain their relationship with each of their adoptive parents and their respective new spouses. Afterwards, the court and a social worker from the Department of Children & Family Services who took part in the interview indicated their impressions of the conversation. One dominant theme of the interview was the alleged recurring mistreatment of the children while visiting the petitioner. The younger of the two children told of one incident where petitioner's wife burned him on the palm of the hand as punishment for handling a glass bell. Both boys expressed a dislike for petitioner's wife and were anxious and fearful about returning to their adoptive father. While the matters of abuse and preference as to parents had been discussed with the children at respondent's home, the court was of the opinion that the children were volunteering information and were speaking freely. In response to the court's questioning that it "wouldn't be too bad to go down there and live with their father," the older boy replied

that he would like to see his 10th birthday. When asked what he meant by this language, the boy answered that "if we go down there, we will either be in the hospital or we will be dead." (Quoting the court speaking on the record.)

The following colloquy took place between the trial judge and the lawyers after the judge and the social worker interviewed the two children in the court's chambers:

"THE COURT: I don't feel that I am being cross examined. I want you to have the entire benefit of this conversation and my impression and Jerry's impression, and I will say that yes, both children expressed a preference that was to stay with their mother.

MR. MONTROY: Did they express a definite concern and/or fear of returning and living with their father?

THE COURT: Yes, sir, and I am stating that on the record.

MR. MONTROY: This may be a difficult question, Your Honor. The preference they had for staying with their mother, how could you gage that so far as the strength of their preference?

THE COURT: It was my opinion that both boys had a very strong feeling in this regard.

MR. MONTROY: And, the same regard, Your Honor, I would ask the same question regarding their anxieties and fears of returning and staying with their adopted father, how would you gage that?

THE COURT: In my impression on that score, the same. I had a strong feeling in that regard also.

MR. MONTROY: Jerry, asking you those same questions, would your responses be the same?

JERRY VALLEMAIN: Yes, sir. I am in agreement with that."

It is incredible that the trial court could receive this sort of testimony and still place custody of these children in petitioner. It is not difficult to visualize the effect that living in fear will have on the welfare of the children.

■■ This court in *Anderson v. Anderson*, 32 Ill. App. 3d 869, 336 N.E.2d 268, stated the following proposition regarding custody cases:

"It is generally held in Illinois that the preference or wish of children by itself does not warrant a change of their custody from one parent to another. [Citation.] However, the feelings of the children in custody matters should always be given serious consideration by the court, [citation], particularly when the desire or preference of the children is based upon reasons related to their best welfare. [Citation.] The guiding star in matters of child custody is, and must be at all times, the best interest of the children. [Citation.]" 32 Ill. App. 3d 869, 870-71.

■■ As above stated in *Anderson v. Anderson*, the wishes of children alone do not warrant a change in custody. However, the total situation in this case leads us to the conclusion that the trial court's order was against the manifest weight of the evidence. The children told the court that they were happy living in Belleville and preferred to live with their mother. The children mentioned that they liked school in Belleville and had made some friends there. Respondent testified that the younger boy was receiving special help for a speech problem, and that the school in which the children were enrolled had special classes for such problems.

■■ An examination of the record reveals that the court considered all of the evidence produced concerning the child-abuse question, but concluded that it was powerless to go behind the Missouri order. Nevertheless, the trial court indicated on more than one occasion that "before this Court would enter any order regarding the custody of these children, the Court was going to require evidence on the question of what was in the best interest of these children in granting custody." We believe the trial court limited its discretion after hearing all testimony and the evidence. It had a right and duty to consider the child-abuse question in deciding the proper award of custody. In reviewing the court's remarks concerning the interview with the children, the responses of the court and the social worker to the questions of the attorneys, and the evidence produced by respondent and petitioner on the question of child abuse, it is our opinion that the allegations of child abuse were established. They were verified to the extent that the petitioner should not have been awarded custody of the children under all the facts presented to the trial court.

Respondent resides with her husband, John Searles, who is a foreman at the Chrysler Plant in Fenton, Missouri. They were married in 1972. Searles testified that he loved the children very much and treated them as if they were his own He stated that the children accepted him as their father and they called him "Dad." The children, when speaking to the court, referred to their adoptive father, petitioner, as "Benny" and their stepfather as "Dad."

Respondent stated that she felt that petitioner could be given visitation privileges so long as they were exercised in Illinois. She expressed some fear in possibly having to return to Missouri, because of a 45-day sentence she received in an earlier visitation dispute. We note in passing that a 45-day sentence on a contempt citation entered on a visitation matter is a rather harsh penalty and, as a practical matter, respondent's serving the sentence would be a condition precedent to her being able to visit the children in Missouri. This would be the inevitable result of the trial court's rulings.

■■ We are hesitant to substitute our opinion for that of the trial

judge who saw the witnesses and listened to their testimony, but in view of the history of this litigation and the events surrounding the case, we are not content with the order of the trial judge. When all factors are weighed together, we conclude that for the welfare and happiness of the children, the respondent must be granted custody of these children. The trial judge's order was against the manifest weight of the evidence.

Therefore, the order of the Circuit Court of St. Clair County is reversed and the cause is remanded to the trial court with directions to enter an order granting custody of the two children to the respondent, and to arrange reasonable visitation rights in petitioner.

Reversed and remanded with directions.

EBERSPACHER and G. J. MORAN, JJ., concur.