Proctor, Appellant, *v.* Proctor.

Argued June 11, 1968. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*James F. McClure, Jr.,* with him *Thomas B. K. Ringe, Jr.,* and *Ringe, Peet & Mason,* and *McClure & McClure,* for appellant.

*George C. Corson, Jr.,* for appellee.

OPINION BY HOFFMAN, J., September 12, 1968:

This case is an appeal from a custody order of the Court of Common Pleas of Montgomery County.

The parties were married and resided in Georgia; a daughter, Holly, was born of that marriage, in December, 1959. In February, 1966, the parties separated and Holly remained with her mother, Mrs. Proctor. In June, 1966, a Georgia court action to obtain custody of Holly was instituted by her father. Subsequently, Mrs. Proctor was advised by her attorney that she had been awarded temporary custody of Holly by the Georgia court, which retained continuing jurisdiction. That same day, Mrs. Proctor filed a libel for divorce in Georgia, and, together with Holly, left Georgia. After a three week stay in Maryland, they moved into the home of Mrs. Proctor's parents in Montgomery County, Pennsylvania, where they have resided for the past two years.

On August 20, 1966, the Georgia Superior Court of Camden County, proceeding under a cross bill filed by Dr. Proctor, in the divorce action, entered an order awarding temporary custody of Holly to Dr. Proctor. He then came to Pennsylvania with his attorney and served a copy of the order on Mrs. Proctor on August 27, 1966. A hearing upon these actions in Georgia was held on November 7, 1966, which resulted in the awarding of permanent custody of Holly to Dr. Proctor.

On December 14, 1966, Dr. Proctor instituted a Petition for Custody of Holly in the Common Pleas Court of Montgomery County. On October 10, 1967, that court entered an order awarding custody of Holly to Mrs. Proctor with reasonable visitation rights allowed Dr. Proctor. That order is now on appeal.

This case presents the following questions: (1) Is Pennsylvania bound by the Georgia custody order of November, 1966, (2) If not, what disposition should be made?

Appellant asserts that the full faith and credit clause Article IV, Section 1, of the United States Constitution requires Pennsylvania to enforce the decree of the Georgia court awarding permanent custody to Dr. Proctor. He is mistaken, even though under Pennsylvania law Georgia had proper jurisdiction on November 17, 1966 to determine the custody of Holly who was not then physically resident there.[1]

The United States Supreme Court has pointed out in *New York ex rel. Halvey v. Halvey*, 330 U.S. 610 at 615 (1947), and reiterated in *Kovacs v. Brewer*, 356 U.S. 604 at 607 (1958), that it is clear with respect to custody decrees "that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered."

---

[1] In *Com. ex rel. Scholtes v. Scholtes*, 187 Pa. Superior Ct. 22, 142 A. 2d 345 (1958), a mother filed a petition for writ of habeas corpus to gain custody of her minor child when previously the father had filed a petition for writ of habeas corpus regarding the custody of the minor child and then forcibly removed the child from Pennsylvania. In asserting jurisdiction to hear the case our Court at p. 25 stated: "The mother's petition for writ of habeas corpus while a separate proceeding, was in effect a continuation of the proceedings instituted by the father. . . . A court should not permit a party to short-circuit a legitimate proceeding by removing the subject matter of the litigation from the jurisdiction of the court properly acquired. . . . The taking of the child out of the jurisdiction by the father after the institution of his suit should not be permitted to affect the result."

Likewise, in the instant case, Georgia was sufficiently interested in Holly since she had been born and raised there and her father intended to remain in Georgia. A few months' absence would not defeat Georgia's jurisdiction over her.

Applying this constitutional test, Pennsylvania has at least the same latitude to abandon the Georgia custody decree as would the Georgia court applying Georgia law. Under Georgia law, custody decrees are awarded solely on the basis of best serving the child's welfare. *Lockhart v. Lockhart,* 173 Ga. 846, 162 S.E. 129 (1931); *Kniepkamp v. Richards,* 192 Ga. 509, 16 S.E. 2d 24 (1941). These decrees may be modified or vacated when subsequently there is a "substantial change [in circumstances] not naturally expected that affects the welfare of the child . . ." *Bowen v. Bowen,* 223 Ga. 800, 158 S.E. 2d 233 (1967). Georgia does not require as a prerequisite to a modification of a custody decree that the original party awarded custody be unfit to continue in that capacity, but only that there be a change in circumstances materially affecting the welfare of the child. *Adams v. Heffernan,* 217 Ga. 404, 122 S.E. 2d 735 (1961). This change in circumstances need not be of a moral or financial character. *Handley v. Handley,* 204 Ga. 57, 48 S.E. 2d 827 (1948), and the court is "given wide discretion in such cases." *Danner v. Robertson,* 221 Ga. 516, 145 S.E. 2d 554 (1965). Hence if a change in circumstances has occurred since Georgia rendered her November 7, 1966 custody order, that order is not entitled to res judicata effect in Georgia and therefore, is not entitled to full faith and credit by Pennsylvania.[2]

In making our award, the following facts are relevant in determining whether full faith and credit is required of Pennsylvania and how custody should be awarded by the Pennsylvania court.

---

[2] This is in full accordance with our Supreme Court's statement that full faith and credit need not be given to an out of state custody decree when at least there have been "substantial and important changed circumstances" since it was rendered. *Brocker v. Brocker,* 429 Pa. 513 at 525, 241 A. 2d 336 (1968).

Holly is now almost eight years old. For the past two years she has resided with her mother and maternal grandparents in Montgomery County. In that time she has formed new attachments and friendships. She attends school and is settled and doing well. As evidenced by the lower court's in chambers conversation with her, Holly appears to be healthy, secure and content in her Pennsylvania environment. She is more than adequately cared for by her mother and grandparents. The lower court found that Holly now lives in a fine home and surroundings which are very suitable for her. It further characterizes Mrs. Proctor as providing "excellent care of Holly."

In the light of these facts, there has been a significant change in Holly's life situation since the rendering of the Georgia custody decree. She is no longer the same youngster that she was in Georgia. Two years in the life of a girl of such tender years is a very long time. She can no longer recollect with any precision what her life back in Georgia was like. To send her back there now would virtually require her to blot out the last two years of her existence and sever all her present attachments. She would be returned to an environment where she has no friends in her peer group, where she would have to attend a school that is new and different and where she would have to make all the subtle and difficult adaptations in outlook required of children moving from one region of the country to another.

Thus, we are persuaded that, under Georgia law, the facts of this case present a sufficient material change in circumstances necessitating a modification of the Georgia custody decree. Regardless of whether Mrs. Proctor's taking of Holly from Georgia was wrongful, the only salient consideration under Georgia law is the welfare of Holly. We believe that a Georgia

court would not consider the November, 1966 custody order as res judicata and return Holly to her father and stepmother in Georgia. To do so might cause irreparable harm to the child, as Holly would have to abandon her present secure existence and face a new and uncertain environment in Georgia. Holly has been shuttled about too much already for a child of such tender years. As there is no rule in Georgia that custody cannot be awarded to a nonresident parent, *Johnson v. Johnson,* 211 Ga. 791, 89 S.E. 2d 166 (1955), under the clear language of *Kovacs v. Brewer,* supra, full faith and credit need not be given to the Georgia custody decree by Pennsylvania.

Since the best interests of Holly dictate that she remain with her mother,[3] we affirm the order of the lower court.

Order affirmed.

---

[3] We need not decide whether to apply Georgia or Pennsylvania custody law in making this determination, because the custody law of each jurisdiction, as applied to the facts in this case, would lead to the same result. In Georgia as well as Pennsylvania the controlling consideration in a custody proceeding is the best interest and permanent welfare of the child. Act of June 26, 1895, P. L. 316, §2, 48 P.S. §92; *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350 (1953) ; Ga. Code Ann. §74-107. But if the application of each jurisdiction's laws pointed to dissimilar results, then we might be led to a choice of laws, which would be made in a context apart from the requirements of full faith and credit. C.f. *Commonwealth ex rel. Sage v. Sage,* 160 Pa. 399, 28 Atl. 863 (1894) ; *Griffith v. United Air Lines,* 416 Pa. 1, 203 A. 2d 796 (1964).