385 A.2d 1384

**John E. REED**

v.

**Diane L. HIGH, Appellant.**

Superior Court of Pennsylvania.

Argued April 13, 1977.

Decided April 28, 1978.

Henry E. Sewinsky, Sharon, with him Rodgers, Marks & Perfilio, Sharon, for appellant.

Thomas G. Wallace, Columbus, Miss., with him Geoffrey Paul Wozman, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and SPAETH, JJ.

PER CURIAM:

In this custody case a Mississippi court on January 26, 1976, following a hearing at which the mother-appellant did not appear because, she says, her attorney told her to take the child and leave the state, permanent custody was awarded to the father. Later on May 6, 1976, a Rhode Island Court after hearing dismissed the mother's petition for custody, awarded custody to the father and ordered the child delivered to him forthwith.

The father-appellee then filed this writ of habeas corpus in Mercer County Pennsylvania seeking custody. Both parties appeared at the hearing on this petition and the lower court afforded appellant ample opportunity to offer testimony to show any change in circumstances that had occurred since the Mississippi hearing. She offered none, and the court again decreed that the father should have custody.

The only argument now advanced by the appellant is that the lower court based its decree on the Full Faith and Credit precept without the benefit of a hearing on the merits.

This argument is not supported by the record. The lower court exercised its independent judgment based on facts disclosed at the hearing in arriving at its determination to

give full faith and credit to the Mississippi and Rhode Island custody orders. *Irizarry Appeal*, 195 Pa.Super. 104, 169 A.2d 307 (1961) and *Friedman v. Friedman*, 224 Pa.Super. 530, 307 A.2d 292 (1973).

The order is affirmed.

SPAETH, J., files a concurring opinion in which CER-CONE, J., joins.

HOFFMAN, J., files a dissenting opinion.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I believe several different situations should be noted:

First: Suppose *both parents* litigate in State A the issue of which one of them should have custody of the child, and custody is awarded to one parent. If the other parent then nevertheless, by trick or force, takes the child to State B, or if the child is there on a visit and the parent refuses to return the child, in my opinion the court in State B should give full faith and credit to the award of custody entered by the court in State A. To say that the court in State B is free to reexamine the issue of which parent should have custody can only encourage resort to force: it is the same as saying to the parent disappointed by the award entered by the court in State A, "If somehow you can get the child out of State A and into State B you can have the court in State B try the custody case all over."

I suggest that what I have just said is supported by *Brocker v. Brocker*, 429 Pa. 513, 241 A.2d 336 (1968), where it was said that "the Full-Faith-and-Credit clause . . . would seem to require every Court in Ohio to give full faith and credit to the Pennsylvania Court's Custody Order and, in the absence of substantial and important changed circumstances, an Ohio Court should not be permitted to ignore or nullify or modify the Pennsylvania Court's Custody Order." Id., 429 Pa. at 525, 241 A.2d at 341. While this statement

implies that full faith and credit will not be given where there are "substantial and important changed circumstances", it seems to me that where the "changed circumstances" derive from the act of one parent in wrongfully taking, or refusing to return, the child, they cannot be characterized as "important."

I am quite unpersuaded by the suggestion that the court in State B should be allowed to try the custody case "[b]ecause the child's welfare is the controlling guide," and "a custody decree is of an essentially transitory nature." See Dissenting Opinion, HOFFMAN, J., at 1388, footnote 4, quoting Mr. Justice FRANKFURTER. The court in State A knows as well as the court in State B that the child's welfare is the controlling guide. The point, it seems to me, is that unless the parent who was initially denied custody is required to return to State A—that is, is required to return because of the refusal of the court in State B to disturb the award entered by the court in State A—then the parent will be encouraged to kidnap the child from State A and initiate a custody proceeding in State B. It is essential that we make it plain that resort to such measures will be futile. We do not make it thus plain by uttering a vague caveat to the effect that although the court in State B may try the custody case, it should "take into account" the parent's action in "flouting" the law by kidnapping the child. In no litigation do emotions run so high as in custody cases. The only way to deter kidnapping is for the court to which the kidnapped child is presented to refuse to adjudicate who should have custody of the child.[1]

1. Such a refusal to adjudicate custody may now be based on statute, as distinguished from on an interpretation of the scope of the full faith and credit clause. On June 30, 1977, the General Assembly enacted the Uniform Child Custody Jurisdiction Act, Act No. 1977–20, 11 P.S. §§ 2301–2325, effective July 1, 1977. Section 9(b) of the Act provides in part:

Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child

Second: Suppose *one parent* litigates custody in State A, the other parent not appearing *because of having received no notice* of the action. Then, I agree, in a later custody proceeding the court in State B is not obliged to give full faith and credit to the award of custody entered by the court in State A. That is what I think *Friedman v. Friedman*, 224 Pa.Super. 530, 307 A.2d 292 (1973), stands for; to the extent that it stands for anything more, I disagree with it, and withdraw my joinder in it.

Third: Suppose *one parent* litigates custody in State A, the other parent not participating *despite having initially appeared to litigate.* That is the present case. The father started this custody action in Mississippi ex parte. The ensuing award of custody was therefore not entitled to full faith and credit. (*See* Situation No. 2, just discussed). Then, however, the mother appeared, filing a motion for continuance and for further time to plead. Having done so, she was obliged, in my opinion, to continue with the litigation and to present to the Mississippi court whatever evidence she believed supported her claim to custody. Instead, she got control of the child—the child was with her on a visit—and she refused to return with the child to Mississippi. She thereby defied lawful process just as effectively as though she had completed the litigation in Mississippi, and after losing, had kidnapped the child and taken her to Pennsylvania. Thus in substance the present case is the same as that supposed in Situation No. 1, discussed above.[2]

after a visit or other temporary relinquishment of custody . . . (Emphasis added.)
The meaning of "[u]nless required" remains to be developed by the cases; "required" is, however, a strong word, and would seem to impose a very heavy burden of proof on the kidnapper parent.

2. I do not intend the three situations supposed to be an exhaustive enumeration. Other situations may be imagined, more difficult. Suppose, for example, that one parent (having kidnapped the child) litigates custody in State A, and gives notice of the action to the other parent, who is in State B. If the parent in State B ignores the notice, is the order entered by the court in State A entitled to full faith and credit? For cases manifesting the same concern I have expressed here *see Stuard v. Bean*, 27 Ariz.App. 350, 554 P.2d 1293 (1976); *Jolly v. Avery*, 220 Kan. 694, 556 P.2d 449 (1976). *See also* 4

Accordingly, I believe the lower court was correct in giving full faith and credit to the award of the Mississippi court. I therefore concur in the affirmance of the lower court's order.

CERCONE, J., joins in this opinion.

HOFFMAN, Judge, dissenting:

Appellant contends that the lower court erred in failing to conduct a full custody hearing. I agree and, therefore, dissent.

On July 15, 1975, the Chancery Court of Lowndes County, Mississippi, entered a decree divorcing the parties to this action.[1] On September 12, 1975, appellee filed a petition for custody of his then three year old daughter, Tina, and presented evidence that Tina's mother, appellant, had deserted Tina when she left Mississippi. After hearing this *ex parte* evidence, the Mississippi court granted temporary custody of Tina to appellee until a final hearing could be held with both parties present. On October 19, 1975, appellant returned to Mississippi and filed a motion for continuance and additional time to plead. During the interval before the scheduled final hearing, appellee allowed appellant to visit her daughter; appellant, however, left Mississippi with the child. Appellee then filed a petition to hold appellant in contempt and appellant's counsel filed a motion to withdraw as counsel of record because he had not been able to contact her. On January 26, 1976, at an *ex parte* hearing, the Mississippi court awarded custody of Tina to appellee, subject to appellant's reasonable right of visitation. The court found that appellee had the means and ability to care for the child in every way. The court also found appellant to be in

FLR 1069, comments on parental kidnapping. *And see* the Uniform Child Custody Jurisdiction Act, cited note 1, *supra*; the Act makes reference to a wide variety of possible situations, although not in the context of the full faith and credit clause.

1. The divorce decree is not part of the record. Consequently, we do not know what provisions the divorce decree may have contained concerning custody of the parties' daughter.

contempt of court and ordered her incarceration until she posted a $1500 bond to insure her compliance with future court orders.

After leaving Mississippi, appellant took Tina to Newport, Rhode Island, and filed a petition for custody in the Newport Family Court. However, appellant did not appear at the scheduled hearing. On May 6, 1976, the Rhode Island court entered an order denying appellant's petition because the Mississippi decree was entitled to full faith and credit. The order stated that appellee and "an officer of the court"[2] testified.

Sometime after filing the custody petition with the Newport Family Court, appellant, her new husband, and Tina moved to a trailer park in Transfer, Pennsylvania, the home of appellant's parents. On June 3, 1976, appellee filed a habeas corpus petition in the Mercer County Court of Common Pleas. On June 25, 1976, the lower court conducted a hearing which appellant and appellee, both represented by counsel, attended. At the beginning of the hearing, the lower court ruled that the Mississippi and Rhode Island custody decrees were entitled to full faith and credit unless appellant could demonstrate that "something has happened since the 6th of May that completely changes the situation, . . ." Therefore, the court refused to allow appellant to present testimony concerning conditions prior to May 6, 1976, or appellant's ability to raise Tina, despite the argument of appellant's counsel that neither the Mississippi nor the Rhode Island court had conducted a full hearing to determine Tina's best interests and welfare. Appellant's counsel then made the following offer of proof: the Mississippi court only obtained jurisdiction over the parties and the child because appellee refused to return Tina to appel-

2. According to appellee's brief, the "officer of the court" was in fact appellant's Legal Aid attorney who testified that he did not know where appellant was and that he had notified her of the scheduled hearing. The record before us does not contain a transcription of the Rhode Island hearing. Therefore, we do not know exactly what testimony appellee and the "officer of the court" presented to the Rhode Island court.

lant then residing in Pennsylvania, after the expiration of a visitation period. Appellant left Mississippi with Tina prior to the final custody hearing pursuant to the advice of her Mississippi attorney. Moreover, her Legal Aid attorney in Rhode Island failed to inform her of the date of the Newport Family Court proceedings, despite his knowledge that appellant had moved to Transfer. Finally, appellant's parents and neighbors would have testified favorably concerning appellant's ability to raise her child, and appellant would have produced Tina so that the court could observe her health and condition. After rejecting this offer of proof, the lower court concluded the hearing and ordered that appellant relinquish custody of Tina to appellee. Appellee took custody of Tina, and this appeal followed.

Appellant contends that the lower court erred in ruling that the Full Faith and Credit Clause of the United States Constitution[3] precluded testimony concerning appellant's ability to raise her child and her reasons for failing to participate fully in the Mississippi and Rhode Island custody proceedings. The United States Supreme Court has never explicitly delineated what respect, if any, the Full Faith and Credit Clause requires a court to give to a sister state custody decree. In *New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947), a Florida court awarded a mother custody of her child. The father did not appear in the Florida proceedings; instead, he took the child to New York. A New York court, after a full hearing, ordered that the mother be given custody of the child, but increased the father's visitation rights. On appeal, the Supreme Court confronted the issue of whether a New York court had *any* power to modify a Florida custody decree. Under Florida law, a Florida court could have modified its original order because there had not been a full hearing initially. Therefore, the Supreme Court held that New York court could properly conduct a full hearing and modify the Florida order. The Court stated:

**3.** Article IV, § 1 provides in pertinent part: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."

"Whatever may be the authority of a State to undermine a judgment of a sister State on grounds not cognizable in the State where the judgment was rendered (Cf. *Williams v. North Carolina*, 325 U.S. 226, 230, 65 S.Ct. 1092, 89 L.Ed. 1577), it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." Supra at 615, 67 S.Ct. at 906. Finally, the Court expressly declined to decide "whether the power of New York to modify the custody decree was greater than Florida's power; [or] whether the State which has jurisdiction over the child may, regardless of a custody decree rendered by another State, make such orders concerning custody as the welfare of the child from time to time requires." Supra at 615–616, 67 S.Ct. at 907. See also *Ford v. Ford*, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962); *Kovacs v. Brewer*, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1956);[4] *May v. Anderson*, 345 U.S.

4. In a concurring opinion in *Kovacs v. Brewer*, supra, 356 U.S. at 609, 611–13, 78 S.Ct. at 968, Justice FRANKFURTER eloquently stated his belief that the Full Faith and Credit Clause has no application to sister state custody decrees:

"It was the purpose of the Full Faith and Credit Clause to preclude dissatisfied litigants from taking advantage of the federal character of the Nation by relitigating in one State issues that had been duly decided in another. The clause was thus designed to promote a major policy of the law: that there be certainty and finality and an end to harassing litigation. But when courts are confronted with the responsibility of determining the proper custody of children, a more important consideration asserts itself to which regard for curbing litigious strife is subordinated—namely, the welfare of the child. That . . . 'is the polar star by which the courts must be guided in awarding custody.' . . . When the care and protection of the minors within their borders falls to States they must be free to do 'what is best for the interest of the child. . . .'

"Because the child's welfare is the controlling guide in a custody determination, a custody decree is of an essentially transitory nature. The passage of even a relatively short period of time may work great changes, although difficult of ascertainment, in the needs of a developing child. Subtle, almost imperceptible, changes in the fitness and adaptability of custodians to provide for such needs may develop with corresponding rapidity. A court that is called up to determine to whom and under what circumstances custody of an infant will be granted cannot, if it is to perform its function responsibly, be bound by a prior decree of another court, irrespective of whether 'changes in circumstances' are objectively provable. To say this is not to say

528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Proctor v. Proctor*, 213 Pa.Super. 171, 245 A.2d 684 (1968), cert. denied, 396 U.S. 839, 90 S.Ct. 101, 24 L.Ed.2d 90 (1969).

My review of Mississippi custody cases persuades me that Mississippi law precludes modification of a custody decree absent a material change in the circumstances which were in existence at the time of the original hearing, regardless of whether these circumstances were actually the subject of testimony at that hearing and regardless of whether both parties participated in the hearing. In *Logan v. Rankin*, 230 Miss. 749, 94 So.2d 330 (1957), a father obtained legal custody of his children pursuant to a Mississippi court decree. The mother, however, removed her children to Texas. The father filed a habeas corpus petition in a Texas court; the mother's answer alleged a material change in circumstances since the entry of the Mississippi decree. Although the trial court initially refused to entertain this petition, Texas appellate courts held that full faith and credit did not bar the mother from demonstrating that she deserved custody because of a material change in circumstances since the entry of the Mississippi decree. See also, *New York ex rel. Halvey v. Halvey*, supra. On remand, the father failed to appear and present testimony; instead, he took the children back to Mississippi. The mother, however, adduced evidence of a material change in circumstances, and the Texas court awarded her custody. She then filed a habeas corpus petition in a Mississippi court. The lower court denied the petition without a hearing but the Mississippi Supreme Court ultimately ruled that full faith and credit required that the Texas decree be honored unless the father could demonstrate a material change in circumstances since the

that a court should pay no attention to a prior decree or to the *status quo* established by it. These are, of course, among the relevant and even important circumstances that a court should consider when exercising a judgment on what the welfare of a child before it requires.

"In short, both the underlying purpose of the Full Faith and Credit Clause and the nature of the decrees militate strongly against a constitutionally enforced requirement of respect to foreign custody decrees." (citations omitted).

entry of the Texas decree. The Court held that the father was barred from presenting testimony as to facts and circumstances in existence at the time of the Texas decree because he had failed to take advantage of his opportunity to produce such testimony before the Texas court. See also *Rankin v. Logan*, 233 Miss. 631, 103 So.2d 403 (1958); (Same case on appeal after lower court conducted a full hearing and awarded custody to the mother. The Mississippi Supreme Court affirmed.) *Honeywell v. Aaron*, 228 Miss. 284, 87 So.2d 562 (1952). Therefore, a Mississippi court would not allow modification of its original custody decree in the instant case because appellant has not alleged a material change of circumstances since the entry of the Mississippi decree on January 26, 1976.[5] Given my assessment of Mississippi law, I believe we must confront the question which the United States Supreme Court has been so reluctant to decide: whether a court of one state (Pennsylvania) can constitutionally exercise a greater power of modification than the sister state court (Mississippi) which entered the original custody order? Pennsylvania cases have addressed and decided this issue. In *Commonwealth ex rel. Rogers v. Daven*, 298 Pa. 416, 148 A. 524 (1930), a North Carolina juvenile court, after a full hearing with both parents in attendance, placed a mother's two daughters in a boarding house. Instead of appealing this order, the mother took her children to Pennsylvania. A North Carolina juvenile court officer filed a writ of habeas corpus in a Philadelphia municipal court; the court refused to pass upon the merits of the case and remanded the children to the North Carolina juvenile court. Our Supreme Court reversed and ordered

---

5. Of course, I admit some trepidation in my attempt to predict the result a Mississippi court would reach if appellant had petitioned for modification in Mississippi. In particular, I note that four judges concurred in the result in *Logan v. Rankin*, supra. Moreover, in *Reno v. Reno*, 253 Miss. 465, 472, 176 So.2d 58, 61 (1965), the Supreme Court, in dictum, stated: "A decree as to the custody of a child is never final, in a sense, inasmuch as it is subject to modification and change, either in regular term or vacation upon changed circumstances or conditions subsequent to the decree, but it is final and conclusive of *facts in evidence* at the time it was rendered." (Emphasis supplied).

the lower court to conduct a full hearing on the issue of the children's best interests. In rejecting a claim that full faith and credit precluded reconsideration of the North Carolina court's order, our Supreme Court stated:

"There are authorities . . . which hold that the award of the custody of children in one jurisdiction cannot be properly changed in another except on proof of changed conditions, and that the burden of proof as to the latter rests upon the one who is seeking a change of custody. . . . This is not consistent, however, with the principle on which the leading cases rest, viz.: that, *whenever a court is called upon to award the custody of a child, the guiding star is its welfare. And the court where the matter is pending must decide that grave question on its own best judgment, unfettered, but not necessarily uninfluenced, by a prior adjudication.*"

"In our opinion, the true view of the question is that where the custody of a child has been passed upon by the proper court in one jurisdiction, who has heard the case and made an adjudication incorporating therein certain findings of facts, the facts so found should, as to the parties participating therein, be treated as established and not open to question in another jurisdiction, especially where the parties so appearing neglected to avail themselves of the statutory right of appeal. Upon those facts and any others that may be presented, the court, where the matter is again brought up, must determine the ultimate question of the best interest of the child. Whether the same conclusion should be reached, even on the same facts, depends on the judgment of the court rehearing the case." 298 Pa. at 422, 148 A. at 526. (Emphasis supplied).

In *Friedman v. Friedman*, 224 Pa.Super. 530, 307 A.2d 292 (1973), a West Virginia court awarded custody of two children to their father. The mother, although subject to the jurisdiction of the West Virginia court, did not attend the proceedings because she allegedly did not receive notice of the hearing date. The mother took the children to Pennsylvania; the father followed and filed a habeas corpus peti-

tion. The lower court held that full faith and credit barred reconsideration of the case, but on appeal, our Court unanimously decided that the West Virginia decree had no effect whatsoever, and we remanded for a full hearing to determine to whom the custody of the children should be entrusted. We reiterated the standards articulated in *Commonwealth ex rel. Rogers v. Daven,* supra,[6] and added: "Unlike other judgments or decrees, an order of custody is a unique and delicate matter. It is never final, but is considered temporary in nature, subject to constant review and modification. Because the State has a duty to protect the children's best interests and welfare it may always entertain an application for modification and adjustment of custodial rights. This right to oversee the interests of children within this Commonwealth is of paramount importance. We may therefore make an independent judgment based on the facts presented by the parties in determining which parent is better suited to have the custody of the minor children.

**6.** In *Friedman,* we did not discuss the impact, if any, of *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968), upon the rule of *Daven.* In *Brocker,* our Supreme Court affirmed a lower court order holding a father in contempt because he failed to comply with an order requiring him to return his children to their mother before the end of the school summer vacation. Apparently, the father attempted to secure modification of the custody order in an Ohio court before the end of the summer vacation period despite a stipulation in the divorce decree that the Butler County Court of Common Pleas would have exclusive jurisdiction over modification petitions. The record did not reveal if the Ohio court had jurisdiction over the mother or what action the Ohio court decided to take. (The father's brief suggested that the Ohio court ultimately awarded custody to the father. Id., 224 Pa.Super. at 532, 307 A.2d at 294. Concurring Opinion of ROBERTS, J.). In concluding that the lower court properly found the father in contempt, the Supreme Court noted that the Ohio court's lack of jurisdiction, comity, and full faith and credit all required the Ohio court to honor the Pennsylvania custody decree "in the absence of substantial and important changed circumstances." Id., 429 Pa. at 525, 241 A.2d at 341. I believe that the court's language in *Brocker* is ill-considered dictum based on a record of uncertain facts and far removed from the central issue before the court: whether the father deliberately committed civil contempt by violating the lower court's order to return the children before the end of summer vacation. Moreover, *Brocker* is not factually analogous to the instant case; in *Brocker,* the court initially hearing the custody case fully considered the testimony of both parties.

This right of review not only encompasses the weighing of new facts, but extends to those facts established in the court of a sister state." 224 Pa.Super. at 534–35, 307 A.2d at 295. Finally, we noted that our state's paramount interest in the welfare of the children in conjunction with the mother's absence at the West Virginia proceeding demanded that the lower court be free to consider all facts and evidence anew, unfettered by an obligation to accept the facts found by the West Virginia court.

I believe that *Daven* and *Friedman* establish that the strictures of full faith and credit must be subordinated to the paramount interest of the child's state of residence in protecting the child's welfare and best interests.[7] *See also Commonwealth ex rel. Logan v. Toomey*, 241 Pa.Super. 80, 359 A.2d 468 (1976); *Commonwealth ex rel. Thomas v. Gillard*, 203 Pa.Super. 95, 198 A.2d 377 (1964). While *Daven* and *Friedman* counsel that Pennsylvania courts should accept facts found by a sister state on the basis of evidence presented to it, we cannot discharge our ultimate duty of independently determining the best interests of a child when the only testimony before us concerns one parent's ability to raise a child. I would not extend full faith and credit to bar consideration of facts which could have been presented at the original hearing, but in fact were not presented.

---

**7.** *Daven* and *Friedman* are not derelicts on the sea of the law. Restatement (Second), Conflict of Laws, § 79, comment c at 239 provides, in pertinent part: "The welfare of the child is always the overriding consideration. For this reason probably the majority of courts have not felt themselves bound by full faith and credit, even in the absence of changed conditions, to enforce without question the provisions of a custody decree rendered in another State. As a matter of policy, such decrees will frequently not be reexamined when a parent, who is dissatisfied with the first award, brings the child into the State of the forum for the sole purpose of obtaining a redetermination of the custody issue. In other situations, the courts have evinced little hesitation in reexamining the decree and in rendering a new one of their own when this was believed necessary for the best interests of the child." For specific examples of state court refusal to apply the dictates of full faith and credit to sister state custody decrees, see *Bonds v. Lloyd*, Ark., 535 S.W.2d 218 (1976); *People ex rel. Strand v. Harnetiaux*, 46 Ill.2d 424, 263 N.E.2d 30 (1970); *Bachman v. Mejias*, 1 N.Y.2d 575, 154 N.Y.S.2d 903, 136 N.E.2d 866 (1956).

In the instant case, neither the Mississippi nor Rhode Island court considered testimony concerning appellant's ability to raise her child or her reasons for not fully participating in these proceedings. In short, there has been no conclusive determination of the most vital question in a custody case: How can the child's welfare best be protected? Therefore, I would remand for a full evidentiary hearing at which both appellant and appellee would be permitted to present evidence of their respective abilities to raise Tina, and the lower court would determine which placement would be in Tina's best interests. While a factual hearing might reveal that appellant inexcusably and in bad faith refused to participate in the Mississippi and Rhode Island custody proceedings. I believe that this disrespect for legal processes should not totally preclude the possibility of granting custody of Tina to appellant if such an award would foster Tina's best interests. Instead, appellant's alleged flouting of the law, if proven, should only be one factor, albeit an important one, in resolving the question of Tina's best interest. See *Commonwealth ex rel. Rogers v. Daven,* supra; *Irizarry Appeal,* 195 Pa.Super. 104, 169 A.2d 307 (1961). I dissent.