## Talhelm v. Talhelm

*David W. Rahauser*, for petitioner.
*Patrick J. Redding*, for respondent.

EPPINGER, P.J., January 27, 1981—Robert and Edna Talhelm were formerly married and are the parents of two children, Heath and Matthew, nine and eight, respectively. On October 10, 1980 the parties stipulated that the children should be in the primary custody of their mother and that the father should have visitation rights. As part of the stipulation the parties agreed and the court ordered that the parties should not exercise custody in the presence of a person of the opposite sex to whom they were not related by blood or marriage. This portion of the agreement and order was based on the fact that apparently the wife had a boyfriend with whom she was living at the time.

When the father learned that the mother was violating this provision of the order, instead of either asking for a modification of the custody order or asking that she be cited for contempt of court, he filed a petition for a writ of habeas corpus to secure primary custody of the children. This is the matter that is before the court.

A hearing was held and the evidence was clear that the mother had the children in her home with her paramour and was living with him as though they were married. The children were well aware of this. On the court's own motion, the mother was cited to show cause why she should not be held in contempt of court for her failure to abide by the

terms of the order of October 10, 1980. The court set a hearing for the next day.

At that hearing, the court found that up to December 2, 1980, 5:30 p.m., the mother was in violation of the conditions of the order of October 10, 1980 and therefore was in contempt of court. The court further found that after 5:30 p.m. on that day she was not in violation because the man had moved out of the home and was residing at the Anthony Wayne Hotel.* We reserved our decision on whether a penalty should be imposed on the mother and particularly on whether, as requested by the father's counsel, she should be required to pay his attorney's fees and other expenses.

On the issue of whether the custody of these children should be altered, the only changed circumstances was the fact that the mother was living with her paramour. This has two implications. The first is the effect that had on the children, and our court has reflected concern about this. See Walters v. Walters, 3 Franklin 108 (1979). The second is whether a mother who in her own priorities deems it more important to have a relationship with a man with the consequences inherent in a violation of the court's order is really a suitable person to have primary custody of the children.

The first question raises no current problems because of the mother's marriage to her paramour. The second problem remains and is more complicated. Here we find little guidance in appellate decisions. This may be because in most instances contempt proceedings are used to deal with the problem. The father's approach by declaring this to be a

---

*Since that time, the mother and the man have married and are now living with the children, but of course they are husband and wife.

change in circumstances, thereby warranting a change of custody, may be novel.

In Reed v. High, 254 Pa. Superior Ct. 367, 385 A. 2d 1384 (1978), a dissenting judge opined that disrespect for legal process should not totally preclude the possibility of granting custody of a child to her mother and that flouting of the law should only be one factor, albeit an important one, in resolving the issue in the child's best interest.

The issues in the Reed case are not at all like the ones here. But Judge Hoffman's dictum is one to which we subscribe. Therefore we come again to the question of what is in the best interests of the children, considering the open violation of this court's order as being an important element in the decision.

We referred the husband's habeas corpus petition to our Child Custody Mediation Officer. His report noted the mother's poor judgment in living with her paramour and raised the question about the mother's ability to separate her own needs and desires from doing what is necessary to keep the children with her. It also expressed the hope that the mother would terminate her living relationship with her boyfriend so as not to confuse the boys and cause continued difficulties with their father.

However, the mediation officer, who also testified at the hearing, recommended that the children remain with their mother and our own review of the evidence compels us to concur in this recommendation. The children both expressed a desire to live with their mother, both seemed to have made a satisfactory adjustment to life with her new husband, and while her action in defiance of the court order was indeed a changed circumstance, it was not one that materially affected the life of the children. So we will not change the custody arrange-

ments; this means that the father's petition for a writ of habeas corpus will be denied.

The way the mother's contempt of court was considered may be somewhat unique. A petition was not filed to have her found in contempt, but the habeas corpus petition did allege that she was in contempt of court and her answer admitted the facts upon which such a finding by the court could be based. Moreover, the hearing evidence bore out the allegations.

Notice to the mother that she would be required to defend herself in a contempt proceeding raised by the court's own motion was not required because any penalty would be for her failure to comply with a court order of which she was fully cognizant: Brocker v. Brocker, 429 Pa. 513, 519, 520, 524, 241 A. 2d 336, 339, 341 (1968).

The Brocker case also instructs us: "[A] Court can for present or past acts of misbehavior amounting to civil contempt impose an unconditional compensatory fine and/or a conditional fine and imprisonment, and such fine may be payable to the United States or to the Commonwealth or to the county or to the individual who was injured."

For her contempt we assess against the mother the costs of these proceedings, $60 to be paid by her for the services of the Court Child Custody Mediation Officer and the father's reasonable counsel fees which shall be submitted to the court for approval: 42 Pa.C.S.A. §2503(7), Act of April 28, 1978, P.L. 108, sec. 16, 11 P.S. §2416(b) [repealed, see now 42 Pa.C.S.A. §5364]. As to the latter citation, the father did not have to travel from one court to another to enforce the order, but it is clear from this legislative statement that counsel fees are an item of injury as mentioned in Brocker.

## ORDER

January 27, 1981, it is ordered that custody of Heath and Matthew Talhelm shall remain as heretofore provided.

It is further ordered that for her contempt Edna Jane Talhelm shall pay the costs of these proceedings, the fee required to be paid to the Child Custody Mediation Officer and Robert E. Talhelm's reasonable counsel fees in this proceedings which shall be submitted to Edna Jane Talhelm and her counsel for comment and then approval by the court.