No. 48,125

In the Matter of the Application of Nancy E. Jolly for a Writ of Habeas Corpus. NANCY E. JOLLY, *Appellee*, v. LYNDELL L. AVERY, *Appellant*.

(556 P. 2d 449)

Opinion filed November 6, 1976.

Bruce F. Landeck, of Lowe, Terry & Roberts, of Olathe, argued the cause and was on the brief for the appellant.

No appearance or brief was filed on behalf of the appellee.

The opinion of the court was delivered by

MILLER, J.: This habeas corpus proceeding involves the custody of eleven-year-old Michael Lynn Avery. His mother, Nancy E. Jolly, is the petitioner-appellee; his father, Lyndell L. Avery, is respondent and appellant. The matter was heard and the petition granted in Division 6 of the District Court of Johnson County, Kansas. The respondent raises several points on appeal, most of which involve the exercise of discretion by the trial court.

The background facts are not remarkable. Nancy and Lyndell were married in Kansas in 1957. They then moved to Michigan, where Michael was born in 1964. Four years later the parents separated. Nancy remained in Michigan; Lyndell returned to Kansas and has resided in Johnson County since 1968. Nancy filed

for divorce, and a default decree was entered in April, 1969, by the Circuit Court of Oakland County, Michigan, dissolving the marriage contract and granting to Nancy the care and custody of Michael. The court also granted visitation privileges to Lyndell, including the right to have Michael come to Kansas for a visit of up to one month each summer. Both Nancy and Lyndell have remarried.

Michael came to visit his father during the summer of 1975. Nancy says that Michael came to Kansas on August 8, and that Lyndell agreed to return him to Michigan on August 28, but instead, Lyndell telephoned Nancy's attorney on that date advising him that Michael would not be returned to Michigan. Lyndell acknowledges that Michael came to Kansas to visit him under and pursuant to the visitation orders entered by the Circuit Court of Oakland County, Michigan, and that Michael remained in Kansas until the petition for writ of habeas corpus was heard.

Next in the chain of events, the circuit court entered an emergency order on August 29, directing Lyndell to return Michael to his home in Michigan immediately, or to appear before that court on September 17 at 9 a. m. to show cause why he should not be punished for contempt. This order was served upon Lyndell on September 5.

Lyndell, on September 2, commenced an action in the District Court of Johnson County, Kansas wherein he sought the temporary and permanent custody of Michael. He alleged in his petition a change of circumstances since the granting of the Michigan decree in 1969, and the unfitness of both Nancy and her present husband. Nancy was served with summons on September 9. This case was assigned to division 5.

Nancy filed her verified application for a writ of habeas corpus in the District Court of Johnson County, Kansas on September 8. She pleaded the 1969 decree of the Michigan court granting her Michael's custody and the emergency order of August 29 requiring Lyndell to return Michael to Michigan. She alleged that not withstanding these orders, Lyndell was unlawfully restraining and holding Michael in his custody. This action was assigned to division 6, and a writ of habeas corpus was issued, returnable on September 10. The record does not reflect the date on which the writ was served.

Lyndell answered the habeas petition and a hearing was held

before division 6 of the Johnson County District Court on September 10, both parties appearing in person and by counsel, and Michael being out of the courtroom but within the building. The court refused to hear evidence as to changed circumstances or fitness of the parents, and limited its consideration to (1) whether there was a valid and effective order of the Michigan court awarding custody, and (2) whether there was a violation of that order. It found in the affirmative on both questions, determined that in the interest of comity it should give full faith and credit to the Michigan court order, and granted Nancy immediate custody of Michael.

Simply stated, respondent here complains that the court erred in not holding an evidentiary hearing; in failing to transfer the matter to division 5 under local rule 3; and in refusing to grant respondent a stay pursuant to K. S. A. 60-1505. We will consider these points in the order stated.

The court was first faced with a determination of whether to hold a full evidentiary hearing on the issue of change of custody as urged by the respondent. Lyndell's answer denied all of the allegations of the petition except the identities of the parties and their residences, and that they are the natural parents of Michael. However, attached as an exhibit to the answer was a copy of the verified petition for change of custody filed by Lyndell a few days previously in the same court. By that verified document Lyndell pleaded facts which he chose to deny in the habeas action—that the parties were divorced by decree of a Michigan court, which decree awarded custody of Michael to Nancy and visitation privileges to him; and that Michael was physically present in Johnson County pursuant to the visitation granted Lyndell by the court in Michigan. He challenged the copies of the orders of the Michigan court appended to the habeas petition because they were certified and not authenticated. The trial court specifically inquired if respondent denied or in any way challenged the validity of those orders, and no challenge except as to lack of certification was forthcoming. The long and short of respondent's argument then and now is that he wanted the trial court to hold an evidentiary hearing not on the validity of the Michigan court orders but upon his request for a change of custody.

Here we have a parent who brings a child into Kansas temporarily under a summer visitation order entered by a court of our

sister state, and then seeks to invoke the equity jurisdiction of our courts to avoid compliance with the order under which temporary custody of the minor was secured. The Michigan court has continuing jurisdiction in child custody matters under MSA 25.97, and may upon proper application and showing, change the custody or otherwise alter or revise the decree insofar as it provides for the care, custody or support of minor children of the marriage. *Rybinski v. Rybinski*, 333 Mich. 592, 53 N. W. 2d 386; *Sperti v. Sperti*, 326 Mich. 620, 40 N. W. 2d 746; *Young v. Young*, 13 Mich. App. 395, 164 N. W. 2d 585.

At the time of the hearing on September 10 before the trial court in this matter, the Michigan court had already issued its emergency order of August 29, and had scheduled a hearing for September 17. The trial court recognized its jurisdiction to hold an evidentiary hearing, but declined to do so in the exercise of its discretion. In its memorandum, the trial court said:

". . . The Court is aware that it could have jurisdiction to have an evidentiary hearing on change of custody but feels that it should give full faith and credit . . . [to the Michigan court proceedings]."

The trial court also indicated that it was invoking the "clean hands" doctrine in exercising its discretion.

The problem facing the trial court is a recurring one. Justice (now Chief Justice) Fatzer discussed it in detail in *Perrenoud v. Perrenoud*, 206 Kan. 559, 576-578, 480 P. 2d 749, where he said:

"Frequently courts have been faced with the problem whether to give 'full faith and credit' or 'comity' to a sister state's decree and refuse to reexamine its merits, or to exercise their own discretion and protect the welfare of minor children within their jurisdiction. . . . This court has recognized that a decree of a court of one state having jurisdiction relating to the custody of minor children, is, under the doctrine of 'comity' prevailing among sister states, entitled to recognition in this state. However, full faith and credit has only limited application to child custody decrees; it is inherent in the nature of such a decree that it is not final and conclusive, but is subject to the right of the parties to show a change of circumstances and conditions. . . .

"It is apparent that . . . the door is open wide, so to speak, to 'forum shopping'. . . . Some decisions point out that such abuse may be prevented by the imposition of the 'clean hands' doctrine which prevents a parent from invoking the court's jurisdiction if he is a fugitive from the state issuing such decree, or has made misrepresentations in some way to obtain the custody of the children, or is flaunting a foreign proceeding or decree. The doctrine seems to be making advancement in family law and is being relied upon in some jurisdictions where the circumstances merit its application. In cases of this character, the court is dealing with a matter equitable in nature

where the child's welfare is the paramount consideration, and it is a familiar equitable maxim that '[h]e who comes into equity must come in with clean hands.' . . .

. . . . . . . . . . . . . . .

"The 'clean hands' doctrine, as applied in child custody cases, is an equitable one, is not an absolute, and is to be applied or not applied at the court's discretion in each particular case. . . ."

*Anderson v. Anderson*, 214 Kan. 387, 520 P. 2d 1239, is factually similar to the case at hand. The Andersons were divorced in Minnesota. The trial court gave Mr. Anderson custody of the minor child, and granted Mrs. Anderson visitation privileges, including the right to bring the child to Kansas for four weeks during the summer. Mrs. Anderson brought the child here in the summer as authorized, and before the visit ended filed an action in the District Court of Sedgwick County alleging a change of circumstances and praying for a change of custody. While that action was pending and undetermined, Mr. Anderson, finding his child and former wife living in El Dorado, filed an action in habeas corpus in the District Court of Butler County. In his petition he set out the Minnesota decree and alleged that Mrs. Anderson was violating its provisions by retaining the child after her visitation rights expired. The trial court granted the writ. It gave full faith and credit to the Minnesota decree and, applying the "clean hands" doctrine, denied Mrs. Anderson's request to introduce evidence showing a change of circumstances. We affirmed, relying upon and citing extensively from *Perrenoud*, supra.

We think the trial court here was fully justified in taking like action. Plaintiff complains that there was no evidence before the trial court on which to render such a decision. He points out that his answer constituted a general denial, thus putting in issue all of the factual allegations of the habeas petition. His answer, however, includes a copy of his verified petition in the change of custody action he had commenced. A comparison of the denials in the answer with the averments in respondent's petition indicates that the general denial was not advanced in the utmost good faith.

Our rule, K. S. A. 60-208 (*b*) (since amended), provides in applicable part that a party:

". . . [S]hall admit or deny the averments upon which the adverse party relies. . . . Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part . . . of an averment, he shall specify so much of it as is true . . . and shall deny only the remainder. . . ."

As Judge Gard notes in his Kansas Code of Civil Procedure, p. 33, the rule requires in substance that where a pleader denies generally, he must mean it. Respondent, in his answer, denied that the parties were divorced on April 9, 1969, in the Circuit Court of Oakland County, Michigan. He denied that that court granted the custody of Michael to Nancy and granted visitation privileges to him. In his petition, however, he alleged that the parties were divorced by decree of the Circuit Court of Oakland County in April, 1969; that the decree granted the custody of Michael to Nancy; and alleged that Michael was physically present in Johnson County, Kansas, visiting with respondent at his residence under the visitation orders entered by the Circuit Court of Oakland County, Michigan in its divorce decree. Further, he alleged that he remarried on May 10, 1969, the month following the entry of the decree. It was readily apparent to the trial court at the hearing, and is readily apparent to us, that respondent did not in good faith controvert the material allegations of the habeas petition. No useful purpose would have been served by requiring the petitioner to offer evidence to establish the allegations of her petition, when those allegations were not controverted. The answer, when read with the conflicting averments of the attached petition to change custody, did not constitute a specific denial of the material allegations of the petition.

Respondent's counsel orally indicated a desire to offer evidence before the trial court in support of respondent's application for a change of custody—not evidence challenging the allegations of the habeas petition. Under these circumstances it was not error for the trial court to accept the statements in the petition as true.

Respondent contends that the court erred in not holding an evidentiary hearing on his request to change custody. He contends that he was not "forum shopping"; that he came into court with "clean hands"; and that he was not in contempt under the Michigan court order since the show cause hearing had not yet been held. The court found that the Michigan custody order had not been vacated, modified or changed and that respondent received the minor child with the understanding that the child would be returned on August 28. Notwithstanding, respondent did not return the child to his mother in Michigan, but maintained him within this state. The Michigan court then entered its emergency order requiring respondent to immediately return the minor child to

Michigan or show cause why he should not be punished for contempt. These findings of the trial court are supported by the record.

We hold that absent unusual circumstances, where a parent brings a child into this state for temporary visitation under an order of a court of another state, which has continuing jurisdiction to change or modify its decree, then in the interest of comity a Kansas court may, and in most instances should, give full faith and credit to the decree from our sister state and decline to hear on its merits an application to change custody made here under such circumstances. To hold otherwise would create chaos in child custody proceedings, discourage the granting of visitation privileges to nonresidents, aggravate relationships between separated spouses, and, most importantly, would adversely affect the children involved. Here, it is clear that respondent was holding the child in violation of the orders of the Michigan court. That court had, prior to the Kansas hearing, set the matter down for hearing. Respondent had notice of that setting. Under the circumstances, petitioner did not come into the District Court of Johnson County with "clean hands," and the trial court did not abuse its discretion by declining to hear the application to change custody, and by giving full faith and credit to the Michigan proceedings, where the matter was already set and could be fully heard.

Petitioner also complains that the trial court erred in not transferring the habeas petition to division 5 of the District Court of Johnson County where his action to change custody was pending. Local rule 3 provides for the assignment of companion cases to the division having the lowest number. A similar question arose in *Anderson v. Anderson,* supra. There we noted that the habeas court might have deferred taking action until after final hearing on the pending change of custody action, but we held it was not required to give the earlier case priority. Similarly, we know of no legal impediment to the trial court's proceeding to hear the habeas petition here.

As the United States Supreme Court observed in *Fay v. Noia,* 372 U. S. 391, 399, 400, 9 L. Ed. 2d 837, 83 S. Ct. 822:

"We do well to bear in mind the extraordinary prestige of the Great Writ, *habeas corpus ad subjiciendum,* in Anglo-American jurisprudence: 'the most celebrated writ in the English law.' 3 Blackstone Commentaries 129. It is 'a writ antecedent to statute, and throwing its root deep into the genius of our common law. . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. . . .' "

Habeas corpus has been described as a high prerogative common law writ of ancient origin. Its function is to provide a speedy and efficacious remedy to illegal restraint. Clearly, by its very nature, a proceeding in habeas corpus is entitled to priority; the judge is directed by statute to "proceed in a summary way to hear and determine the cause. . . ." K. S. A. 60-1505 (a). We conclude that the trial court did not err in proceeding to hear the matter with dispatch on the return date of the writ, and in denying the requested transfer to division 5 under local rule 3.

Finally, respondent contends that the trial court committed reversible error in failing to grant a stay of its order pursuant to K. S. A. 60-1505 (d). Respondent, however, has sustained no prejudice and we therefore need not consider this point.

For the reasons stated, the judgment is affirmed.