No. 53,698

PHILLIP L. BILLS, *Appellee,* v. SHANNON M. MURDOCK, *Appellant.*

(654 P.2d 406)

Opinion filed December 3, 1982.

*Paul D. Post,* of Topeka, argued the cause and was on the brief for appellant.

*Kenneth F. Crockett,* of Topeka, argued the cause and *Doug Hope,* of Topeka, was with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Shannon M. Murdock, from an order of the Shawnee District Court changing the custody of her daughter, Misty Dawn Bills, from Mrs. Murdock to Misty's father, the plaintiff, Phillip Bills. In this proceeding we are called upon to interpret the Uniform Child Custody Jurisdiction Act, K.S.A. 38-1301 *et seq.,* to determine whether the trial court had jurisdiction of the matter of child custody under that act and, if jurisdiction is found, then to determine whether the trial court erred in exercising that jurisdiction. For clarity we will refer to the plaintiff as the father, to the defendant as the mother, and to the child by her given name.

The parties were divorced in Laramie County, Wyoming, on November 8, 1976. The Wyoming court granted the custody of Misty Dawn to her mother. The father was given reasonable visitation and was required to pay child support. The Wyoming court has not modified or changed its order.

The father moved from Wyoming to Maryland, and in 1978 moved to Topeka where he has since resided. In December, 1977, the parties had some disagreement, and the father has not paid the court-ordered support since that time. He has had Misty Dawn in his home for frequent visits and has bought her some clothing and has given her gifts. He has remarried and has two children.

The mother left Wyoming and she and her daughter moved to Missouri. They moved to Kansas for a brief time, then returned to Missouri. In 1979 they moved to Texas and have lived there for the past three years. The mother remarried and had three children.

We need not describe in detail the homes and living arrangements of the parties, since those facts are not material to our decision. On June 22, 1981, Misty Dawn came to Kansas to visit her father. He promised the mother that he would return Misty Dawn on August 7. On August 5 he filed this action in the District Court of Shawnee County against the mother, asking that custody be changed to him. On August 7, the mother called him; he did not mention the pending action but told her that he was unable to return Misty Dawn because of "scheduling problems at work."

The mother was personally served with summons in Texas on August 10. Immediately, she came to Kansas and filed a petition for habeas corpus; a hearing was scheduled for August 31. She returned on that date; the hearing was held; the court consolidated the two cases, determined that it should give full faith and credit to the Wyoming decree, and restored the custody of Misty Dawn to her mother. The trial court also ordered the mother and child to return for a hearing of the custody case on September 22. In addition, the court ordered social studies of the homes of both parties.

On September 22, 1981, the consolidated cases came on for hearing. Mother and child returned from Texas and were present. The habeas action was dismissed as moot since custody had already been restored to the mother. Evidence was introduced in the custody matter, and the court then changed custody from mother to father. In announcing this ruling, the judge found that Wyoming now has no jurisdiction since father, mother, and child no longer live in or have any substantial connection with that state, and that both Kansas and Texas are the appropriate states to exercise jurisdiction. The court also found that it had jurisdiction under K.S.A. 38-1303($a$)(2) because (1) it is in the best interests of the child that the Kansas court take jurisdiction and decide the case without further delay, (2) the father lives in Kansas and has significant connections with this state, and (3) the minor child has a significant connection with this state. In support of the latter conclusion, the judge said:

"[T]he child in question has a significant connection with this State since one parent lives as a resident now permanently within the State and the child has visited this summer for a period of a number of weeks and will now be presumably having some significant contact with that parent while in the State of Kansas either by way of visitation or custody, but, in any event, will have a child-parent relationship and that, therefore, the Court is persuaded that a significant connec-

tion does exist particularly in view of the fact that the child was physically present at the time the action was commenced and also is physically present within the State now. However, the most important consideration is the continuing parental relationship of the parent who now resides within the State of Kansas."

It is from this ruling that the mother appeals.

Did the trial court have jurisdiction of the proceeding before it? This issue must be decided under the Uniform Child Custody Jurisdiction Act, K.S.A. 38-1301 *et seq.*, enacted by the legislature in 1978 and effective here since January 1, 1979. While we have mentioned that act in two cases, *Beebe v. Chavez,* 226 Kan. 591, 599, 602 P.2d 1279 (1979), and *Nixon v. Nixon,* 226 Kan. 218, 220, 596 P.2d 1238 (1979), the enactment was not the basis of either decision. In *Beebe,* the action arose in 1977, before the uniform act was adopted in this state. We cited it only to illustrate that the legislature had since made clear our long-standing rule that courts of this state could and should properly refuse to exercise jurisdiction, absent any showing of emergency or abuse, when a court of another state has continuing jurisdiction. [See also *Jolly v. Avery,* 220 Kan. 692, 556 P.2d 449 (1976), and *Anderson v. Anderson,* 214 Kan. 387, 520 P.2d 1239 (1974).] In *Nixon,* we cited the act, along with various sections of our divorce and alimony laws, K.S.A. 60-1601 *et seq.*, to support our conclusion that a court of this state which first acquires jurisdiction over child custody matters in a divorce case retains that jurisdiction to the exclusion of other Kansas courts of concurrent jurisdiction. Neither *Beebe* nor *Nixon* is helpful here.

The first section of the uniform act states the purposes of the act. It reads in part:

"38-1301. . . . (*a*) The general purposes of this act are to: (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

"(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

"(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state;

. . . .

"(b) This act shall be construed to promote the general purposes stated in this section."

Next follows the definitions section. It defines "home state" as follows:

"38-1302.

. . . .

"(e) 'home state' means the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period . . . ."

The third section deals with jurisdiction. It reads:

"38-1303 . . . (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

"(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise dependent and neglected; or

"(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

"(b) Except under paragraphs (3) and (4) of subsection (a), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine the child's custody."

The eighth section directs or authorizes courts to decline jurisdiction under certain circumstances. It reads in part:

"38-1308 . . . .

"(b) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances."

Misty Dawn lived with her mother in Texas for some three years before this action was commenced. She had been in Kansas, visiting her father, for less than two months when the petition in this case was filed. Clearly, Texas was Misty Dawn's "home state." K.S.A. 38-1302(e). Texas being the home state, jurisdiction does not lie in Kansas under K.S.A. 38-1303(a)(1). Similarly, there was no showing of abandonment, mistreatment or abuse, and nothing to indicate that Texas either did not have jurisdiction or had declined to exercise it. Thus, Kansas jurisdiction cannot be premised upon K.S.A. 38-1303(a)(3) or (4).

The only subsection upon which jurisdiction can be based is K.S.A. 38-1303(a)(2), which grants jurisdiction if it is in the best interest of the child that a Kansas court assume jurisdiction because (A) the child and at least one parent "have a significant connection with this state," and (B) there is available here substantial evidence concerning the child's present or future care, protection, training, and personal relationships. That subsection, however, is somewhat clarified by K.S.A. 38-1303(b), which provides in substance that under subsections (a)(1) and (2), the physical presence in this state of the child and one of the contestants is not alone sufficient to confer jurisdiction on a court of this state. In this connection, the following Commissioners' Note to section 3 of the uniform act is instructive:

"Paragraph (2) of subsection (a) is supplemented by subsection (b) which is designed to discourage unilateral removal of children to other states and to guard generally against too liberal an interpretation of paragraph (2). Short-term presence in the state is not enough even though there may be an intent to stay longer, perhaps an intent to establish a technical 'domicile' for divorce or other purposes.

"Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. *But its purpose is to limit jurisdiction rather than to proliferate it.* The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in

a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. *There must be maximum rather than minimum contact with the state."* (Emphasis supplied.) 9 U.L.A. 124 (1979).

The trial court here found that it was in the best interest of the child that the Kansas court assume jurisdiction in order that the matter might be determined without delay, the prolonging of the dispute being inconsistent with the best interest of the child. The trial court found that the father is a resident of Kansas and thus has a significant connection with this state. The final finding supporting jurisdiction is that the minor child has a significant connection with this state. This was based upon the findings that (1) the father lives here, (2) the child has visited in the father's home for a few weeks, (3) the child will have a continuing child-parent relationship with the father, and (4) the child was physically present when the action was commenced and at the time of the hearing. These findings would generally be true in any action filed by a Kansas resident whose child was visiting him at the time of filing.

Does a child have a "significant connection with this state" simply because (1) a parent lives in Kansas, (2) the child has visited the parent, and (3) the child is here when the parent files an action for change of custody? We think not. K.S.A. 38-1301(a)(3) indicates that child custody litigation should ordinarily take place in the state with which the child and the child's parents have the closest connection. Ordinarily this is the child's home, not a state where the child is an occasional and temporary visitor in the home of a parent. K.S.A. 38-1303(a)(1) first provides for jurisdiction in Kansas if Kansas is the home state of the child, or if it had been the child's home within six months before commencement of the action. K.S.A. 38-1303(b) clearly provides that the physical presence of a child and one of its parents within this state is not in itself sufficient to confer jurisdiction. Finally, K.S.A. 38-1308(b) states that courts shall not exercise jurisdiction if a parent has improperly removed a child from the custody of the person entitled to custody, or has improperly retained the child after a visit. Taken all together, these provisions convince us that for a child to have a significant connection with this state, something beyond the residency of a parent in Kansas, the visiting of the child with that parent, and the presence of the child in

Kansas when a petition for change of custody is filed, must be shown.

We have not overlooked the Court of Appeals opinion in *Larsen v. Larsen,* 5 Kan. App. 2d 284, 615 P.2d 806, *rev. denied* 228 Kan. 807 (1980). The facts in that case make it readily distinguishable. The Larsens were married in Kansas and lived here for about ten years, the duration of their marriage. Their children were born here, and lived here for their first four years and nine years respectively. The divorce was granted in Kansas, custody was awarded by the Kansas court, and one parent remained at all times a resident of this state. The children regularly visited in Kansas during the summers. Clearly, Kansas was "home" to the children even though it was not technically the "home state" under K.S.A. 38-1302(*e*). The Larsens twice previously litigated change of custody motions in the court which initially granted the divorce and awarded custody. On those facts, both the trial court and the Court of Appeals determined that jurisdiction existed.

Other courts have wrestled with jurisdictional problems similar to those now before us. More recent decisions have either determined that jurisdiction does not exist, or if it does exist, trial courts should decline to exercise it where the motion is not filed in the "home state," absent any showing of abandonment, mistreatment, neglect, abuse or emergency. See *William L v. Michelle P,* 99 Misc. 2d 346, 351, 416 N.Y.S.2d 477 (1979); *In re Sagan,* 261 Pa. Super. Ct. 384, 396 A.2d 450 (1978); and *Matteson v. Matteson,* 379 So. 2d 677 (Fla. Dist. Ct. App. 1980). We agree.

Our research has not disclosed a judicial definition of "significant connection" as that term is used in the uniform act, and we shall not try to devise a precise definition. We hold only that a child who resides with his or her custodial parent in a sister state and who occasionally visits a parent who lives in Kansas, does not have a "significant connection" with this state sufficient to establish jurisdiction under K.S.A. 38-1303(*a*)(2). To hold otherwise would be to widen the jurisdiction of trial courts under the act, while the purpose of the act is obviously to narrow the jurisdiction and to require child custody litigation, if at all possible, to be held where the child resides.

In view of our disposition of this matter upon jurisdictional grounds, other issues raised in the briefs need not be determined.

The judgment of the trial court is reversed and remanded, with

directions to dismiss the petition for change of custody for lack of jurisdiction.

FROMME, J., not participating.

SCHROEDER, C.J., dissenting: The court has concluded the district court had no jurisdiction of this case under K.S.A. 38-1303(*a*)(2). With this conclusion I disagree.

Where does jurisdiction lie under the Uniform Child Custody Jurisdiction Act (K.S.A. 38-1301 *et seq.*) when Wyoming, the state which rendered the divorce decree, no longer has jurisdiction over the subject matter of the case, because the parties no longer reside there? That Wyoming no longer had jurisdiction is conceded by both parties and remains unchallenged on appeal to this court.

In this custody fight for Misty Dawn Bills between the mother, Shannon M. Murdock, and the father, Phillip Bills, the parties have moved numerous times since the divorce decree was entered in the State of Wyoming. Under these circumstances which state has jurisdiction is dependent upon a question of fact to be determined by the trial court. A recital of the facts, not set forth in the court's opinion, upon which the trial court made the determination that Kansas had jurisdiction, is essential.

The record before this court contains the file from the district court, including the petition, answer, journal entry and order; the home studies made of each parent's home; and the transcript on the hearing in which evidence was presented relevant to the change of custody issue.

The home studies are favorable to both parents. The study concerning the mother in Texas reflects that Misty Dawn, age five, resides with her mother and stepfather in Wichita Falls, Texas, in a three-bedroom mobile home with six other children. Mrs. Murdock stays at home with the children, who range in age from one month to ten years. Two children are Mr. Murdock's from a previous marriage, one child is from a marriage of Mrs. Murdock's prior to her marriage to Mr. Bills, and three children have been born of the Murdocks' marriage. All the children are girls. Mr. Murdock's income is approximately $25,000 per year. The report indicated that Misty Dawn was well cared for, loved and well adjusted in her home situation with her mother.

The home study concerning the father reflects that Mr. Bills and his wife have two daughters, one who is four months and the

other two and one-half years. Mr. Bills is employed in a permanent position with the National Weather Service in Topeka, and earns approximately $30,000 per year. Mr. Bills and his wife own a home and appeared to the interviewer to be rational, mature people.

In addition to the information contained in the home studies, the following testimony was presented at the custody hearing. The parties resided in Wyoming when the divorce was granted and custody of Misty was awarded to the mother. In 1977 Mr. Bills transferred to Maryland and in 1978 he transferred to Topeka, where he has lived since that time.

Since the divorce Mr. Bills has visited with Misty in July 1977, one week in December 1978, two weeks in February 1979, three weeks in October 1979, four weeks in March and April 1980, from October to December 1980, and from June 1981 until this action was filed in August 1981. On one other occasion, in December 1977, the father attempted to have Misty come visit him, but the mother refused to permit the visit.

Mr. Bills' present wife has a degree in education and taught for a year before their marriage. She now stays home with the children. Mr. Bills had enrolled Misty in kindergarten in Topeka during her last visit when this action was commenced. *Pending the action, the district judge ordered Misty to be returned to her mother in Texas in accordance with the Wyoming decree.*

Following the mother's refusal in December 1977 to allow the father to have visitation with Misty, the father ceased paying child support. However, each time he would return Misty following a visit he gave the mother from $50 to $100. He also believed he and his wife had supplied most of Misty's clothing.

The father expressed that he wanted custody of Misty because he believed that due to her home situation in Texas she was neglected and did not receive the attention she needed. He felt that Misty was starved for attention, and believed the mother had sometimes threatened to refuse to allow Misty to visit her father as a disciplinary measure to make Misty behave. Because the mother had moved so often Mr. Bills was concerned that the children were deprived of a consistent home environment, continuity in their education and opportunities to establish friendships with other children. Mr. Bills felt the mother discouraged visitations with Misty by requiring that the visitations be set up at

her convenience. The father has always provided the transportation to and from Misty's home in Texas for her visits with him.

Shannon Murdock testified they have lived at their current address in Wichita Falls, Texas, for five months, since purchasing their mobile home. Mrs. Murdock has moved her family numerous times since her divorce from the plaintiff in Wyoming. In reverse chronological order, the family lived in Iowa Park, Texas, approximately eleven miles from Wichita Falls, for a year during which they resided at two addresses; for short periods of time in Wichita Falls and Gringo, Texas; and at two separate residences in Columbia, Missouri, for a period of six or seven months. Prior to living in Columbia, the family lived in Marshall, Missouri, then Garden City, Kansas, and again in Marshall, Missouri, over a period of a year and one-half. Mrs. Murdock had moved to Marshall, Missouri, following her divorce from the plaintiff. The family planned to move again from Wichita Falls to Iowa Park to be nearer Mr. Murdock's employment as soon as they could arrange for a lot for the mobile home.

Mrs. Murdock testified that it had been necessary for the family to make so many moves because their three-year-old daughter, born prematurely, had numerous medical problems, necessitating a number of major surgeries. They had moved to Texas to be near a children's hospital in Dallas, where they felt the child could receive better treatment. Mrs. Murdock testified Misty shared a room with two of the other children. She denied ever refusing to allow the father visitation with Misty, and believed that because Misty was starting school it would be better for her to remain in Texas so that the daily routine would not be disrupted.

At the time of the hearing the mother had made four trips to Kansas in regard to the custody issue.

The court services domestic relations supervisor who had made the study of the father's home, indicated to the court that he felt the child missed her father terribly, and wanted to visit her father more often. He thought Misty was afraid to express these feelings to her mother because she felt it made her mother angry. The child was obviously very sensitive about the subject, as she would cry and "hang on" to the interviewer when he would attempt to discuss the subject with her.

The court determined it had jurisdiction over the subject matter of this case under the Uniform Child Custody Jurisdiction Act,

K.S.A. 38-1301 *et seq.* Under 38-1303(*a*)(2) the court found that the father and the child had a significant relation with Kansas in that the father was a permanent resident of the state, the child had visited the father a number of times here, including the past summer when the action was commenced, and that a significant parent-child relationship continued to exist between the child and father during the time he had been a resident of this state. Furthermore, the court had before it home studies from each parent's home, the matter had been fully litigated within the state, and the court believed it would not serve the best interest of the child for the matter to be relitigated in the State of Texas. The court determined it was for the best interest and welfare of the child to make a final determination on the matter at this point, rather than to postpone a determination to permit Texas to hear the matter.

The trial court acknowledged that both Kansas and Texas had jurisdiction to hear the custody issue under K.S.A. 1303(*a*)(1) and (2). *Apparently neither party challenged the court's determination that Wyoming no longer has jurisdiction over the subject matter of this case.* Under 38-1314 the custody decree rendered by Wyoming may be modified by a court of this state if the court has jurisdiction. K.S.A. 38-1314 provides:

"(*a*) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction."

When a case is filed under the Uniform Child Custody Jurisdiction Act (UCCJA), K.S.A. 38-1301 *et seq.*, seeking modification of a custody decree rendered by a court of another state, it first must be determined whether the court in which the action was filed has jurisdiction, and if so, the court must decide if it should exercise its jurisdiction. *Larsen v. Larsen,* 5 Kan. App. 2d 284, 286-88, 615 P.2d 806, *rev. denied* 228 Kan. 807 (1980); *Settle and Settle,* 276 Or. 759, 764-65, 556 P.2d 962 (1976), (overruled on other grounds in *Matter of Custody of Ross,* 291 Or. 263, 630 P.2d 353 [1981]). *Dowhanik v. Dowhanik,* 43 Or. App. 379, 382, 602 P.2d 1127 (1979). The first determination, whether the court has jurisdiction, is governed by the provisions of 38-1303. The second decision, whether the court should exercise its jurisdiction,

turns on the best interest of the child, *Larsen v. Larsen,* 5 Kan. App. 2d at 289-90; *Smith v. Smith,* 40 Or. App. 257, 261, 594 P.2d 1292 (1979), and rests within the discretion of the trial court. *Larsen v. Larsen,* 5 Kan. App. 2d at 292. K.S.A. 38-1307 provides guidelines for the trial court to consider in determining whether it is an inconvenient forum. Considerations by the trial court under 38-1307 are made *only after* it is found that a court of this state has jurisdiction under the Act.

I find the facts in *Larsen* to be strikingly similar to those involved here. The parties were divorced in Kansas in 1974, and custody of the two minor sons was granted to the father. The father moved to Minnesota with the children in 1975, and thereafter the children spent the summer months with their mother in Kansas. In 1979, after the children had been with their mother for two months for summer vacation, a motion for change of custody was filed by the mother in Kansas.

The well-reasoned discussion in *Larsen* concerning whether the trial court had jurisdiction under the UCCJA and whether the court should have exercised that jurisdiction under the inconvenient forum provisions of 38-1307, is highly relevant to this case. The court held that although Minnesota had jurisdiction over the matter, as it was the "home state" of the children under 38-1303($a$)(1), Kansas had concurrent jurisdiction under 38-1303($a$)(2). This section provides that this state may assume jurisdiction if it is within the best interest of the child because the child and one of the parents has a "significant connection" with Kansas and "substantial evidence" is available in the state concerning the children's present or future care, protection, training and personal relationships. Because the mother had continued to reside in the state and the children were born in Kansas and had spent their early years here, substantial evidence as to their present and future well-being was available, providing Kansas with jurisdiction under the test in 38-1303($a$)(2). The question was not whether jurisdiction existed under the facts of the case, but whether it should have been exercised. 5 Kan. App. 2d at 287-88.

K.S.A. 38-1307($c$) provides that a court *may* decline to exercise jurisdiction if it finds it is an inconvenient forum and another state is a more appropriate forum. In determining whether it is an

inconvenient forum the court shall consider what is in the best interest of the child, taking into account the following factors:

"(1) *If another state is or recently was the child's home state;*

"(2) if another state *has a closer connection* with the child and the child's family or with the child and one or more of the contestants;

"(3) *if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;*

"(4) if the parties have agreed on another forum which is no less appropriate; and

"(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in K.S.A. 38-1301." (Emphasis added.)

In *Larsen,* the court examined cases from other states which had discussed the inconvenient forum provisions under the UCCJA, including *Schlumpf v. Superior Court,* 79 Cal. App. 3d 892, 145 Cal. Rptr. 190 (1978), which is relied on by the appellant in this case. In *Schlumpf* the court recognized that California had jurisdiction over the motion for change of custody where California had rendered the original decree and the mother had continued to reside there, even though for the nine years preceding the motion the children had lived with their father in Wyoming. However, recognizing that evidence concerning the best interest of the children was more readily available in Wyoming, including the relationship between them and their father, their relationship to their community, their education and the effect a change of custody would have on them, *the California court declined to exercise jurisdiction* until a determination could be made in Wyoming. 79 Cal. App. 3d at 901.

In applying the statutory factors set out in 38-1307(*c*), the Court of Appeals in *Larsen* determined that because the children had lived with their father in Minnesota for the five years preceding the motion, Minnesota probably had a closer connection with the children and evidence concerning them was more readily available there. However, evidence concerning the children's present and future care, protection, training and personal relationships was available in both states, and evidence regarding the mother was more available in Kansas. Declining to follow the conclusion in *Schlumpf,* the court held that the trial court's determination to exercise its jurisdiction under the provisions of 38-1307 *was discretionary* and would be upheld where the determination did not contravene the purpose of the UCCJA as set out in 38-1301. 5 Kan. App. 2d at 292-93.

*Larsen* appears to have been a borderline case, one in which a determination going either way could have been made. The obvious determining factor in the court's decision, after careful consideration of cases from other jurisdictions going both ways, was the fundamental rule of appellate review—that where a trial court exercises a discretionary function, that determination will be upheld on appeal absent abuse in the exercise of that power of discretion. A similar conclusion was reached in *In Re Marriage of Leonard,* 122 Cal. App. 3d 443, 175 Cal. Rptr. 903 (1981). In that case California was the home state and the trial court found it was in the child's best interest to exercise jurisdiction over the custody issue, even though a prior decree had been rendered by a Georgia court. The court held that because concurrent jurisdiction existed in California it was not error for the trial court to refuse to defer jurisdiction to Georgia, for the reason that whether a court chooses to accept jurisdiction or dismiss the proceeding on the ground of inconvenient forum is discretionary and will not be reversed on appeal absent abuse of that discretion. 122 Cal. App. 3d at 468-69. Other states have recognized where two states can exercise jurisdiction under the UCCJA exclusive jurisdiction is conferred on the court in which the matter is first raised. *Petition of Edilson,* 637 P.2d 362, 365 (Colo. 1981). See also K.S.A. 38-1306. This rule has been applied by this court in divorce proceedings where a custody determination is involved. *Nixon v. Nixon,* 226 Kan. 218, 221-22, 596 P.2d 1238 (1979), and cases cited therein. A thorough discussion of cases which have struggled with the jurisdiction and inconvenient forum provisions of the UCCJA can be found in Annot., Validity, Construction and Application of Uniform Child Custody Jurisdiction Act, 96 A.L.R.3d 968, §§ 5-7.

The facts in *Beebe v. Chavez,* 226 Kan. 591, 602 P.2d 1279 (1979), which is relied on by the appellant, are substantially different from those involved here. Following an Arizona decree awarding custody of the parties' child to the mother, the mother moved with the child to Mexico and the father moved to Nebraska. While the mother was in Kansas visiting her parents, the father first instituted a neglect proceeding to have the child taken away from the mother, and then brought a habeas corpus action to have the child placed in his custody. It was held that the district court abused its discretion in holding an evidentiary hearing and

changing custody to the father where no emergency situation existed, the mother and child were temporary visitors in the state, and Arizona had continuing jurisdiction over the matter. The court pointed out that under the UCCJA, enacted after the trial court's determination was made, jurisdiction could not be conferred by mere presence in the state unless certain conditions existed requiring the court to exercise jurisdiction, such as in an emergency where the child needs to be protected or where no other state has jurisdiction. 226 Kan. at 599. The court further recognized that under the principle of comity where a sister state has previously assumed jurisdiction over a custody issue and no emergency exists, a Kansas court should decline jurisdiction.

The differences between the case at bar and *Beebe v. Chavez* are obvious. First the UCCJA was in effect at the time of the trial court's decision in this case and is controlling. Secondly, the court in *Beebe* held that under Arizona law, Arizona had continuing jurisdiction over the matter. In this case, under the UCCJA, Wyoming no longer had jurisdiction. 38-1303. Thus, at the time this action was filed, no other state had assumed jurisdiction over the matter. Neither the rule of comity nor the UCCJA provision requiring a court to decline jurisdiction where a custody proceeding is pending in another state (38-1306) applies.

More importantly, the jurisdictional and procedural deficiencies found in the facts in *Beebe* are not present here. In *Beebe* the trial court apparently assumed jurisdiction on the sole fact the child was present in the state. Furthermore, the mother was denied fundamental rights of notice and an opportunity to be heard before the court's decision was made. This is not the situation presented here. The father is a permanent resident of Kansas and the child has visited him here often, for periods of up to two months at a time. The child was residing in Kansas with the father at the time the custody motion was filed. The mother was served with process in Texas. A full evidentiary hearing was conducted and both parties were represented by counsel. The trial court specifically found:

"It should also be noted that the matter has been fully litigated within the State of Kansas and it would not seem to serve the interest of the child for it to be litigated within the State of Texas."

The trial court closely followed the holding in *Larsen.* First a finding was made that Wyoming no longer had jurisdiction over

the matter, and under 38-1314 a court with jurisdiction could modify the Wyoming order. The court next found specifically that it had jurisdiction under 38-1303(*a*)(2). In its journal entry these findings were stated in detail:

"[T]his court does have jurisdiction to render a decision concerning the custody of the parties' minor child, in that the said minor child's natural father lives in the state of Kansas, that the natural father has significant connections with the state of Kansas, that the minor child has significant connections with the state of Kansas, and that there is an ongoing and continuing parental relationship that exists within the state of Kansas concerning the said minor child."

Thereafter, the trial court considered whether it should exercise jurisdiction, and specific findings of fact were made by the trial court. These are presented as they relate to the factors set out in 38-1307(*c*), the inconvenient forum provision.

(1) Texas was the child's home state.

(2) No determination was made as to which state had a closer connection to the child or family. However, as the appellee points out, Texas arguably does not necessarily have a closer connection to the child and her family by reason of being the home state, in light of the number of times the mother's family has moved within that state.

(3) Substantial evidence concerning the present or future care, protection, training and personal relationships was readily available in this state. The court had before it home study reports from each parent's home, providing, among other things, information concerning the child's home environment, family relationships, living conditions, the parties' emotional stability, and care available for the child. Both parties had appeared in court with counsel and were given an opportunity to testify and present evidence concerning the interest and welfare of the child. It should be noted that although evidence concerning the mother was probably more readily available in Texas and evidence concerning the father more readily available in Kansas, it is doubtful that any additional evidence would have been available in a Texas proceeding that was not available or presented in the Kansas proceeding.

(4) Obviously no agreement had been reached by the parties to litigate the issue elsewhere.

(5) No determination was made by the court as to whether the

exercise of jurisdiction would contravene the purpose of the UCCJA.

Based on these factors the court determined that it would serve the child's best interest to make a final determination of the matter at that point, rather than to postpone a determination and allow the matter to be relitigated in Texas.

In conclusion, it is my opinion that Kansas has jurisdiction under the provisions of 38-1303, as determined by the trial court, and the decision whether to exercise or decline jurisdiction was within the discretion of the trial court. It is not shown that the trial court abused the exercise of its power of discretion.

A finding that another state may have a closer connection to the litigants is only one factor for the trial court to consider under 38-1307 in determining if it would be in the best interest of the child to defer jurisdiction to another forum. Although Texas arguably had a closer connection in this case, the trial court found that this state had sufficient interest in the issue and connection with the litigants to justify assuming jurisdiction. Where there is evidence to support the trial court's findings, it is submitted this determination should be upheld.