Randall L. MURPHY, Appellant,

v.

Mary K. WOERNER, Appellee.

No. S–1820.

Supreme Court of Alaska.

Jan. 22, 1988.

Michael Lerner, Overland Park, Kansas, and Janet D. Platt, Kellicut and Jones, Anchorage, for appellant.

Stuart Cameron Rader, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from a superior court decision modifying a Kansas child custody and support order. It raises the question whether Alaska has jurisdiction to modify the Kansas decree under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act of 1980.

## FACTS AND PROCEEDINGS

Randall Murphy and Mary Woerner were divorced in Kansas in 1981. Under the original decree, Woerner obtained sole custody of their two children; Murphy was ordered to pay $300 per month child support.

Woerner and the children moved to Alaska in 1982. After several hearings, Kansas granted Woerner and Murphy joint custody; Woerner had physical custody during the school year and Murphy had specific visitation rights. Murphy was not required to pay child support. The Kansas court has asserted jurisdiction over custody and visitation disputes several times since entry of the original decree.

In 1985, Woerner filed a complaint in Alaska to modify the 1982 Kansas custody order. She then asked Kansas to relinquish jurisdiction in favor of Alaska, but the Kansas court refused.

Murphy entered a limited appearance to contest Alaska's jurisdiction under the Uniform Child Custody Jurisdiction Act, AS 25.30.010–.910 (UCCJA). The Alaska court concluded that it had home state jurisdiction pursuant to AS 25.30.020(a)(1) and modified the Kansas decree, limiting Mur-

phy's visitation rights, and imposing upon him a child support obligation.

This appeal followed. After oral argument, we ordered supplemental briefing on the question whether the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1980) (PKPA), prohibits Alaska from modifying the custody provisions of the Kansas decree.

## PARENTAL KIDNAPPING PREVENTION ACT OF 1980

■ Interstate child custody jurisdiction disputes are governed by the PKPA and the UCCJA. When the UCCJA proved an imperfect remedy for the staggering national problem of parental child-snatching and forum shopping in interstate child custody disputes, Congress enacted the PKPA to provide a uniform federal standard to ascertain the one state with jurisdiction to modify an existing child custody order. *Meade v. Meade*, 812 F.2d 1473, 1475–76 (4th Cir.1987). To the extent that the PKPA and the UCCJA conflict, the PKPA preempts state law. *Id.*

Under the PKPA, a court of one state generally must enforce, and may not modify, a child custody determination of another state when the custody determination was made consistently with the provisions of the PKPA. 28 U.S.C. § 1738A(a).[1] However, the court of one state may modify the decree of another if the modifying state has jurisdiction and the decree state no longer has jurisdiction or declines to exercise it. *Id.* § 1738A(f).[2]

■ The threshold question is whether the 1982 Kansas decree was made consistently with the PKPA. Since Murphy is still a Kansas resident, the Kansas decree conforms with the PKPA if Kansas had juris-

---

1. 28 U.S.C. § 1738A(a) provides:

    The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

2. *Id.* § 1738A(f) provides:

    A court of a State may modify a determination of the custody of the same child made by a court of another State, if
    (1) it has jurisdiction to make such a child custody determination; and
    (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

diction under its version of the UCCJA. *Id.* § 1738A(c)(1), (c)(2)(E), (d).[3]

When the initial decree was entered, Kansas had jurisdiction because it was the home state of the children. Kan.Stat.Ann. § 38–1303(a)(1) (1986).[4] Kansas had continuing modification jurisdiction in 1982 because Murphy resided there and was the primary custodial parent.[5] Therefore, the 1982 Kansas order is consistent with the PKPA. 28 U.S.C. § 1738A(c)(1), (c)(2)(E), (d).

■ Having concluded that the Kansas decree was entered consistently with the PKPA, Alaska may modify that order only if it has jurisdiction as a matter of state law and Kansas no longer has jurisdiction or declines to exercise it. *Id.* § 1738A(f). Kansas retains jurisdiction to modify its custody orders so long as the child and at least one parent have a "significant connection" with the state and substantial evidence concerning the child's care is available there. Kan.Stat.Ann. § 38–1303(a)(2). Kansas courts have previously asserted modification jurisdiction after the children acquired a new home state. *Larsen v. Larsen,* 5 Kan.App.2d 284, 615 P.2d 806, 809 (1980) (trial court did not abuse discretion by modifying own custody decree upon motion of resident mother after father and children had lived in Minnesota four years).

Kansas has continuing modification jurisdiction today because Murphy is still a Kansas resident, and the children retain a significant connection with Kansas because they enjoy regular summer and holiday visitation with Murphy and their maternal grandparents.[6] Kansas denied Woerner's petition to relinquish jurisdiction to Alaska.[7] We therefore conclude that the PKPA prohibits Alaska from modifying the 1982 Kansas custody order.[8] 28 U.S.C. § 1738A(a).

3. *Id.* § 1738A(c) provides in part:
A child custody determination made by a court of a State is consistent with the provisions of this section only if
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
. . . .
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
*Id.* § 1738A(d) provides:
The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

4. Kan.Stat.Ann. § 38–1303(a) (1986) provides in part:
A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (A) is the home state of the child at the time of commencement of the proceeding . . .
(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

5. The 1982 Kansas order changed primary custody from Murphy to Woerner. It is not clear from the record whether Kansas was still the home state of the children in August 1982; however, if Kansas did not have home state jurisdiction under Kan.Stat.Ann. § 38–1303(a)(1), then it clearly had significant connection jurisdiction under § 38–1303(a)(2).

6. Murphy is entitled to visitation during summer vacation, 5 days in October, 7 days at Christmas, and 5 days during school spring break. The October visitation has been a source of trouble, primarily due to the childrens' school schedule; Murphy exercised that right only in 1984. The children did not go to Kansas during Christmas 1985. Murphy has apparently exercised his visitation rights at all other times.

7. Woerner contends that Kansas abused its discretion when it refused to decline jurisdiction in favor of Alaska. Kan.Stat.Ann. § 38–1307(a) (1986). However, the decision whether to defer on inconvenient forum grounds is left to the sound discretion of the Kansas court, *Hart v. Hart,* 236 Kan. 856, 695 P.2d 1285, 1287 (1985), and we decline to substitute our judgment on this discretionary question. *See Meade,* 812 F.2d at 1478. If Woerner believed that the Kansas trial court abused its discretion, her remedy lay in the Kansas appellate courts.

8. Before the court enters a child custody order, the out-of-state parent is entitled to notice and an opportunity to be heard. Kan.Stat.Ann. § 38–1304 (1986). Woerner argues that Kansas lost jurisdiction because she did not receive

The order of the superior court is VACATED and the case REMANDED with instructions to dismiss the petition to modify the Kansas decree.

RABINOWITZ, Chief Justice, with whom MATTHEWS, Justice, joins, dissenting.

Under Kansas law, a court of Kansas has continuing jurisdiction to modify its custody orders as long as "the child and the child's parents ... have a significant connection with this state." Kan.Stat.Ann. § 38–1303(a)(2). The majority relies on the case of *Larsen v. Larsen*, 5 Kan.App.2d 284, 615 P.2d 806, 809 (1980), for its holding that Kansas had continuing jurisdiction under § 38–1303(a)(2).

Since the intermediate court handed down *Larsen,* the Supreme Court of Kansas has distinguished the case twice. In *Hart v. Hart*, 236 Kan. 856, 695 P.2d 1285 (1985), the court concluded that there was no significant connection where neither parent lived in Kansas and there were no summer visits to the state. In *Bills v. Murdock*, 232 Kan. 237, 654 P.2d 406 (1982), the supreme court concluded that there was not a significant connection where one parent lived in Kansas, the child occasionally visited, and the child was in Kansas when the parent filed for modification.

The Kansas Supreme Court in *Bills* stated:

> [W]e shall not try to devise a precise definition [of "significant connection"]. We hold only that a child who resides with his or her custodial parent in a sister state and who occasionally visits a parent who lives in Kansas, does not have a "significant connection" with this state sufficient to establish jurisdiction under K.S.A. 38–1303(a)(2).

*Id.* 654 P.2d at 411.

Although the children in the case at bar appear to have a somewhat greater connection than did the child in *Bills*, I do not believe that the Supreme Court of Kansas would conclude that the "occasional visits" of the children to Kansas in the instant case constitute a "significant connection" for purposes of § 38–1303(a).

If the children do not have a significant connection to Kansas, Kansas "no longer has jurisdiction." 28 U.S.C. § 1738A(f)(2); Kan.Stat.Ann. § 38–1303(a)(2). The Parental Kidnapping Prevention Act, § 28 U.S.C. § 1738A (PKPA), requires that a state pass a two-pronged test before it can exercise continuing jurisdiction. The PKPA sets a federal and a state standard for continuing exclusive custody jurisdiction. First, as a matter of federal law, the state must have had proper initial custody jurisdiction, and it must remain the residence of the child or any contestant when it modifies that order. Second, under its own custody law, the state must still have custody jurisdiction. *See Meade v. Meade*, 812 F.2d 1473, 1477 (4th Cir.1987).

Because I believe that the children in this case lack a "significant connection" to Kansas, I conclude that the Kansas court lacked continuing custody jurisdiction. I therefore dissent.

notice of hearings held in 1983 and 1984. Even if Woerner did not receive proper notice, Kansas would not permanently lose modification jurisdiction. At most, any orders resulting from those proceedings would be invalid, leaving intact the 1982 order Alaska is now asked to modify.