(758 P.2d 240)

No. 61,099

In the Matter of the Marriage of DANIELLE SIOBHAN MCNAMARA NASICA, *Appellee*, and NOEL MICHEL NASICA, *Appellant*.

Petition for review denied October 6, 1988.

Opinion filed July 15, 1988.

*Michael E. Foster*, of Bonwell, Foster, Irby & Gregory, of Wichita, for appellant.

*Mike Morgan* and *Marilyn Harp*, of Legal Services of Wichita, of Wichita, for appellee.

Before BRAZIL, P.J., RICHARD W. WAHL, District Judge, assigned, and JAMES P. BUCHELE, District Judge, assigned.

BUCHELE, J.: This case involves a question of jurisdiction under the Kansas Uniform Child Custody Jurisdiction Act, K.S.A. 38-1301 *et seq.*

The relevant background, set forth below, is taken from the memoranda of counsel to the district court and briefs on appeal. No evidence was received in this case; therefore no findings of fact have been made. Absent a factual record, we determine this appeal on the questions of law presented.

Danielle and Noel Nasica met while students at the University of Kansas. Danielle is a citizen of the United States and Noel is a citizen of France. They were married in Erstein, France, in 1982, and two children were born to the marriage. On July 4, 1986, Danielle and the two minor children traveled to Wichita, Kansas. Whether Danielle intended to return to France and whether she misrepresented to Noel her reason or purpose for coming to Kansas is disputed by counsel.

On November 20, 1986, after being advised by Danielle of her intention not to return to France, Noel filed for divorce before the Tribunal de Grand Instance in Lure, France. Danielle was notified of this proceeding by mail on January 28, 1987, and responded by filing for divorce in the district court of Sedgwick County, Kansas, on February 11, 1987. Noel filed a motion to dismiss the Kansas action for lack of jurisdiction. The district court partially overruled the motion to dismiss, finding it had jurisdiction to grant a divorce and award sole custody of the two minor children to Danielle. This appeal challenges the trial court's finding of jurisdiction to determine custody of the parties' minor children.

The Uniform Child Custody Jurisdiction Act, K.S.A. 38-1301 *et seq.*, (UCCJA) became effective January 1, 1979. Prior to that time, Kansas courts lacked jurisdiction to determine custody matters absent personal jurisdiction of both parties. *Lillis v. Lillis*, 1 Kan. App. 2d 164, 165-66, 563 P.2d 492 (1977). Now, all actions involving issues of child custody jurisdiction must be considered in conjunction with the UCCJA. *Larsen v. Larsen*, 5 Kan. App. 2d 284, 286, 615 P.2d 806, *rev. denied* 228 Kan. 807 (1980). In applying the UCCJA, courts should first determine whether they have jurisdiction under K.S.A. 38-1303, and, if so, the next step is to decide if the court should exercise that jurisdiction based upon the best interests of the child. *Bills v. Murdock*, 232 Kan. 237, 247-48, 654 P.2d 406 (1982).

K.S.A. 38-1303 provides in part:

"(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming the child's

custody or for other reasons, and a parent or person acting as parent continues to live in this state."

The Kansas Supreme Court construes this section of the UCCJA to require trial courts to decline jurisdiction of child custody matters if Kansas is not the home state of the child, absent a showing of abandonment, mistreatment, neglect, abuse, or emergency under K.S.A. 38-1303(a)(3). *Bills v. Murdock*, 232 Kan. at 243.

Home state is defined in K.S.A. 38-1302 as follows:

"(e) 'Home state' means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."

The six-month residency necessary to establish home state jurisdiction is a definite and certain test. It is grounded on the premise that "[m]ost American children are integrated into an American community after living there six months; consequently, this period of residence would seem to provide a reasonable criterion for identifying the established home." Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795, 818 (1964).

A principal function served by the six-month residency requirement is to protect the stay-at-home parent, who is left by a spouse who removes the children to another state. If the stay-at-home parent institutes proceedings within six months of departure, home state jurisdiction remains in the state where the parties and children resided together. See Commissioners' Note, Unif. Child Custody Jurisdiction Act, 9 U.L.A. § 3 (1979). If a child custody proceeding is not commenced within six months, the transient spouse and children will have established a new home state and may successfully institute a proceeding vesting jurisdiction in the new state of residence.

The Nasica children had lived in Kansas for over six months at the time the petition was filed. Kansas was the home state of the children.

Noel argues that Kansas should decline jurisdiction due to the pendency of the earlier filed divorce in France.

If a proceeding concerning child custody is pending in another state with laws in substantial conformity with the UCCJA, juris-

diction should not be assumed for a second proceeding in this state. K.S.A. 38-1306. The purpose of K.S.A. 38-1306 is to discourage simultaneous and competitive child custody proceedings. Both the court and the parties to the action have affirmative responsibilities under the Act. The parties must inform the court of any other pending proceedings. K.S.A. 38-1309(a)(2). The court, upon receipt of this notice, has an affirmative duty to stay the proceedings before it and make inquiry into the other proceedings. K.S.A. 38-1306(b), (c). This procedure permits the court, where a subsequent action is commenced, the opportunity to examine the totality of circumstances before deciding whether to assume jurisdiction.

The party seeking to defeat jurisdiction carries the burden to establish the pendency of another action and the applicability of the UCCJA jurisdictional bar. The record in this case is void of evidence relative to the scope of a proceeding pending in France. Neither arguments before the trial court nor assertions raised in an appellate brief constitute evidence or are sufficient to satisfy inadequacies of the record. *Rural Water Dist. No. 6 v. Ziegler Corp.*, 9 Kan. App. 2d 305, 310-11, 677 P.2d 573, *rev. denied* 235 Kan. 1042 (1984).

Under the UCCJA, Kansas courts will recognize and enforce custody decrees entered in other countries if they are rendered by appropriate authorities which afford reasonable notice and opportunity for hearing. K.S.A. 38-1323. But, there are no foreign orders of any kind before the court in this case. The trial court consulted the Registry of Out of State Decrees before entering its order and found nothing involving the Nasica children. Absent some confirming indicia of the existence of a pending proceeding pertaining to child custody, we find there is no duty on the part of the trial court to stay proceedings in Kansas, initiate an investigation to locate a pending case, or decline jurisdiction under the UCCJA. Further, it is not established that French child custody laws are similar to the UCCJA.

"[O]ne who submits to the court foreign law which he claims is applicable should do more than merely allege conclusions or short excerpts from the allegedly pertinent statute; he should set out the substance of the alleged foreign law to such an extent that the court may judge whether it has the effect that he ascribes to it.

. . . .

". . . [T]he pleader of foreign law should give not only the substance of that

law but also appropriate citations of the applicable statutes and one or more citations of decisional law, if there is any." Annot., 75 A.L.R.3d 177, 189 (citing *Telesphore Couture v. Watkins*, 162 F. Supp. 727 [D.N.Y. 1958]).

Noel has not established the existence of a pending custody proceeding in a forum with laws substantially similar to the UCCJA. He therefore cannot successfully invoke the provisions of K.S.A. 38-1306.

The provisions of the UCCJA discourage wrongful or reprehensible conduct of a parent, and the court may decline to accept jurisdiction for this reason. K.S.A. 38-1308. Noel's claim of error in this respect must fail for three reasons. First, whether a parent has engaged in wrongful or reprehensible conduct is a question of fact. The party asserting wrongful or reprehensible conduct has the burden to bring forth evidence to prove the allegation. Second, in the absence of a court order to the contrary, both natural parents have an equal right to the custody of their minor children. *State v. Al-Turck*, 220 Kan. 557, 558, 552 P.2d 1375 (1976). Noel's allegation that Danielle deceived him regarding her actual plans when she left France with the children, if proven true, does not rise to the level of wrongful or reprehensible conduct contemplated in K.S.A. 38-1308. See Commissioners' Note, Unif. Child Custody Jurisdiction Act, 9 U.L.A. § 8. Finally, even when wrongful or reprehensible conduct is established, the trial court may exercise discretion in deciding to accept jurisdiction. Exercise of discretion by the trial court will not be disturbed on appeal absent a showing of abuse. *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973). Here, there was a lack of evidence of wrongful or reprehensible conduct on which a finding could be made by the trial court. The trial court's refusal to decline jurisdiction for this reason is clearly not an abuse of discretion.

We conclude that the district court had jurisdiction under the Uniform Child Custody Jurisdiction Act to determine the custody of the parties' minor children. The motion to dismiss was properly denied.

Affirmed.